**UNION LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Lynn W. PERKINS and the Franklin Life Insurance Company, Defendants.**

**Harold E. del Castillo and United States of America, Intervenors.**

**No. LR–65–C–109.**

United States District Court
E. D. Arkansas, W. D.

June 30, 1966.

Wayne Owen, Little Rock, Ark., for plaintiff.

A. F. House, Little Rock, Ark., for Harold E. del Castillo and Franklin Life Ins. Co.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for United States.

## MEMORANDUM OPINION

HENLEY, Chief Judge.

This interpleader suit involves a controversy between the United States and a private creditor of the defendant Lynn W. Perkins, a life insurance salesman formerly in the employ of plaintiff, Union Life Insurance Co., and the defendant The Franklin Life Insurance Co. The private creditor, Harold E. del Castillo, came into the case by way of intervention.[1] Federal jurisdiction is not questioned and is established. 28 U.S. C.A. § 1335.

---

1. The original defendants were Perkins, Franklin, and the Government. The Government moved to dismiss the complaint as against it and for leave to assert its position by means of an intervention. That motion was granted, and the Government intervened in due course.

The case has been submitted to the Court upon the pleadings, a partial stipulation of facts, certain depositions taken upon interrogatories and cross-interrogatories, documentary evidence, and memorandum briefs. This memorandum includes the Court's findings of fact and conclusions of law. Actually, there is only one disputed question of fact in the case.

For a number of years prior to June 11, 1962, Lynn W. Perkins was an insurance salesman for the defendant The Franklin Life Insurance Co., hereinafter Franklin. Perkins was employed in New Mexico and operated out of an agency belonging to the intervenor, Castillo. Perkins was compensated by means of commissions paid on the business written by him.

Beginning 1961 Perkins became rather heavily indebted to Franklin, and under the terms of the contract between Franklin and Castillo, the latter was secondarily liable to the former for the debts of Perkins.

By June 11, 1962, Perkins was also selling life insurance for plaintiff, Union Life Insurance Co. of Little Rock, Arkansas, and was being paid on a commission basis.

On the date above mentioned Perkins addressed the following letter to Union Life Insurance Co.:

> "This letter will authorize you to withhold twenty five percent (25%) of my earned commissions from Union Life Insurance Co. This amount is to be paid to Franklin Life Insurance Co. of Springfield, Ill. until such time that my financial obligations to them are paid in full."

Pursuant to that letter Union duly withheld 25 percent of the commissions earned by Perkins and credited them to the account of Franklin.[2]

On March 23, 1962, the Commissioner of Internal Revenue assessed against Perkins and his wife with respect to calendar year 1960 federal income taxes, penalty and interest totalling $5,722.36. Notice was given and demand was made upon the taxpayers on the same day that the assessment was made. Apparently, the taxpayers, who were then living in Austin, Texas, made a substantial payment because the present balance of the tax claim is $2,843.49 plus "statutory additions." On July 28, 1964, the Government filed its notice of tax lien in Travis County, Texas, in which the City of Austin is located and where Perkins resided.

In the meantime Perkins had been discharged by Franklin, and he undertook to revoke his 1962 authorization to Union to withhold 25 percent of his commissions for the benefit of Franklin. However, it appears that Union did not honor the attempted revocation. In due course Castillo satisfied the obligation of Perkins to Franklin and became subrogated to the rights of the latter so that Franklin really has no interest in the case.

On April 7, 1964, more than two years after the assessment of the federal taxes, penalty and interest, but some months before the notice of federal tax lien was filed in Austin, the Director of Internal Revenue for the Revenue District of Arkansas served a notice of levy on Union and demanded that Union pay over to the Government the amount of the credits to the account of Franklin based on the Perkins authorization of June 11, 1962. Apparently, however, the matter was not pressed; the credits were not paid over to the Government, and this suit was commenced in July 1965. Union paid into the registry of the Court the sum of $1,899.60 and was discharged. The record reflects that all but about $200 of the sum paid into Court was credited to the account of Franklin by Union prior to the date of the filing of the Government's notice of lien.

The position of the Government is that by virtue of the lien provisions of 26 U.S.

---

2. One small cash remittance was made by Union to Franklin. In general, however, the withholdings were simply credited to the account of Franklin on the books of Union.

C.A. § 6321, its claim to the fund in court is superior to the claim of Castillo. Castillo contends, on the other hand, that by virtue of the provisions of 26 U.S.C.A. § 6323(a) his claim to the fund is superior to that of the Government with respect to all credits to the Franklin account prior to the date of the filing of the notice of the tax lien. Castillo concedes that the claim of the Government has priority with respect to credits made after the lien notice was filed.

Section 6321 provides that if any person liable to pay any federal tax neglects or refuses to pay the same after demand, the amount thereof, including penalty and interest, shall be a lien in favor of the Government on all of the taxpayer's property and rights to property whether real or personal. The lien attaches when the assessment is made and continues until the liability for the amount of the assessment is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C.A., § 6322.

However, section 6323(a) provides that until notice of lien is filed, the lien is not valid "as against any mortgagee, pledgee, purchaser, or judgment creditor" of the taxpayer.

■ From what has been said, it is clear that the Government had a lien on all the property and rights in property belonging to Perkins from and after March 23, 1962. Castillo contends, however, that in June 1962, more than two years prior to the filing of the Government's notice of lien, Franklin became a "purchaser" within the meaning of section 6323(a) of 25 percent of the commissions of Perkins due and to become due from Union, and that the section just mentioned is applicable.

Answering that contention the Government urges that under Arkansas law the authorization by Perkins to Union to withhold 25 percent of his commissions for the benefit of Franklin was not a valid assignment of that percentage of the commissions; that the assignment, if it was one, was not recorded in Arkansas; and that in any event Franklin did not become a "purchaser" of that percentage of the Perkins commissions within the meaning of the federal statute and regulations.

Countering that argument, Castillo says that although the letter from Perkins to Union was not acknowledged or recorded, it was a valid assignment, and that there was present consideration for it so that Franklin would be considered a "purchaser" of the interest within the meaning of section 301.6323-1 of the Treasury Regulations. Under that section of the Regulations the term "purchaser" is defined as meaning "a person who, for a valuable present consideration, acquires property or an interest in property." The Government denies that there was "valuable present consideration" for the 1962 authorization.

■ 1. The Government's attack on the validity of the June 11, 1962, authorization from Perkins to Union as an assignment of 25 percent of the earned commissions of Perkins cannot be sustained.

It is true that the authorization was not recorded as provided by the relevant provisions of the Arkansas version of the Uniform Commercial Code, Ark.Stats., Ann., § 85-9-301 et seq. But the absence of recordation although it might well affect priorities would have no bearing on the validity of the instrument as between the immediate parties thereto.

■■ Nor can the Court agree with the Government that the assignment was invalid in the light of the provisions of sections 1 and 2 of Act 34 of 1911 (Arkansas), Ark.Stats., Ann., §§ 81-316 and 81-317. Section 81-316 clearly has no applicability to the assignment here involved. Section 81-317 provides that no assignment of or order for wages to be earned in the future shall be valid when made by a married man, unless the written consent of his wife to making such assignment or order for wages shall be attached thereto. That section was passed obviously to protect the wives and children from the improvidence or extravagance of wage earning husbands,

and it may be doubted that it can be invoked successfully by a creditor of the spouses. More basically, however, the Court agreed with counsel for Castillo that the "wages" referred to in the statute are payments usually considered as "wages" paid to day laborers and the like, and do not include commissions paid to life insurance agents.[3]

2. Coming now to the question of the applicability of section 6323 of the Internal Revenue Code, it has been observed already that Castillo does not claim priority with respect to any commissions earned by Perkins after the Government filed its notice of lien in Texas. Castillo goes further and concedes that if the assignment to Franklin was merely a security for a preexisting debt not supported by new consideration, then Franklin was not a "purchaser" of the 25 percent interest in the commissions earned by Perkins from Union, and that the claim of the Government would have priority.

Castillo contends that there was present, valuable consideration for the assignment consisting of an alleged agreement on the part of Franklin and Castillo that no suit would be filed against Perkins to collect the debt which he owed Franklin and for which Castillo was secondarily liable if Perkins would execute the assignment in question. Castillo says that Perkins executed the assignment in consideration of the alleged forbearance to sue, and that no suit was in fact filed. The Government says that there was never any agreement not to sue.

The record before the Court includes the depositions of Castillo and of Perkins, together with the deposition of R. Raymond Bailey, Franklin's assistant vice president.

By answer to direct interrogatory No. 9 Castillo stated that to induce Perkins to write the letter to Union he promised Perkins that he would not bring any suit

against him for the indebtedness if the money was paid by Union to cover the indebtedness "or any amount that would be applied on the debt consisting of ¼ of his earnings." Castillo further stated that, "This was done by agreement between Lynn Perkins and myself with the approval of Franklin Life." By answer to direct interrogatory No. 10 Castillo stated that Mr. Bailey had authorized him to bind Franklin by the promise made to Perkins. By answer to cross interrogatory No. 5 Castillo stated that the alleged agreement between him and Perkins was oral "and involved no writings."

In answering direct interrogatory No. 2 Perkins stated that he executed the assignment of his own free will; that he owed money at the time, and that he wanted to pay what he owed. Direct interrogatory No. 3 inquired whether immediately prior to the assignment, or at any other time, Franklin threatened suit against him to collect its account. The answer was "No." Direct interrogatory No. 4 asked whether Perkins received "any assurance from Franklin Life Insurance Company that the company would not institute suit against you on the account." The answer was: "There was never anything said about a suit before or after I made the assignment."

Cross interrogatory No. 5 propounded to Perkins asked how he happened to make the assignment. He answered: "When the letter was written I did not know that Franklin was going to cancel my contract which caused me to lose 19 of my renewals plus a large bonus I had due me. I wanted to do what was right, but the Franklin Life didn't."

Direct interrogatory No. 3 put to Mr. Bailey asked if he had taken any steps in behalf of the company to collect the indebtedness from Perkins. He stated that Castillo was instructed to collect the debt or have the same charged to his

3. The Court does not accept the suggestion of counsel for Castillo that the record does not adequately establish the fact that Perkins was a married man in June 1962. If the Court thought the matter of importance, it would permit the record to be reopened.

account. In reply to direct interrogatory No. 4 he stated that there were no negotiations between him and Perkins, and that such negotiations as there were took place between Perkins and Castillo.

Bailey's answer to cross interrogatory No. 1 reveals that Franklin never made any direct demand on Perkins; that demand was made on Castillo. And by way of answer to cross interrogatory No. 2 Bailey stated that there was never any written forbearance from suit to his knowledge "as all matters relating to the collection of the Lynn Perkins' balance and the obtainment of the letter assignment were handled in behalf of the Company by Harold E. Del Castillo."

■ The burden in this case is upon Castillo to show by a preponderance of the evidence that he is entitled to the benefit of section 6323. MacKenzie v. United States, 9 Cir., 109 F.2d 540; United States v. Franklin Federal Savings & Loan Ass'n, M.D.Pa., 140 F.Supp. 286; Filipowicz v. Rothensies, E.D.Pa., 43 F.Supp. 619.

■ Both Castillo and Perkins are directly interested witnesses. Castillo wants to obtain the bulk of the fund on deposit in the registry; on the other hand, it is manifestly to the interest of Perkins for the Government to obtain the entire fund; in addition, it is clear from the deposition of Perkins that he bears hard feelings toward Castillo and Franklin and feels that he has been treated badly. The Court is not acquainted with either of those witnesses; nor has the Court had the benefit of observing their demeanor and deportment while testifying. One is as worthy of belief as the other. Actually, the deposition of Bailey does not corroborate or contradict either Castillo or Perkins on the crucial question of whether as consideration for the assignment Castillo in so many words or by implication agreed that no suit would be filed against Perkins. That there was no suit does not establish that there was an agreement that no suit would be filed.

It is clear that any agreement of forbearance was between Perkins and Castillo rather than between Perkins and some other representative of Franklin. The direct interrogatories propounded to Perkins inquired whether suit had been threatened by *Franklin* and whether any assurance had been given by *Franklin* that Perkins would not be sued if he executed the assignment. If the answers of Perkins had been literally and strictly responsive to the relevant interrogatories, it could perhaps be said that the answers do not negative the idea that Perkins and *Castillo* agreed that there would be no suit if the assignment were executed.

But, the answer to direct interrogatory No. 4 is: "There was never anything said about a suit before or after I made the assignment." The Court thinks that this answer amounts to a representation that Perkins never discussed the possibility of a suit with anyone, including Castillo, and that there was no agreement for forbearance. And the answer to direct interrogatory No. 2 to the effect that Perkins executed the assignment of his own free will tends to negative the idea that the assignment was made under pressure or threat of suit or for the purpose of avoiding suit.

■ In the Court's estimation the testimony of Castillo and that of Perkins are in conflict. The Court cannot resolve the conflict, and Castillo must be held to have failed to discharge his burden of proof. Hence, the entire fund in Court must be awarded to the Government.

That conclusion brings up another matter. When the interpleader was discharged, the Court awarded counsel for the interpleader an attorney's fee of $100. On October 18, 1965, the Government filed a motion to set aside that award. On January 11, 1966, the Court wrote counsel and reserved ruling on that motion. The Court stated that although the amount involved was small, the Court viewed the question as a serious one which would not survive if the Government's claim to the fund not be

sustained. That claim has survived, and the question recurs. The Government's statement in support of its motion is cryptic and only one case is cited; counsel for the interpleader has not yet filed a statement in opposition to the motion. The fee awarded was taxed against the fund as part of the costs, and the Court will treat the propriety of the award as a matter of costs.

Judgment in favor of the Government for the balance of the sum in Court will be entered. If counsel cannot agree about the question of the fee, counsel for the Government will file a supplemental statement of reasons and authorities in support of its motion within the next ten days, and counsel for the interpleader may file an opposing statement within ten days thereafter unless he prefers to confess the motion and pay back the $100 which he has received.