[Civ. No. 40336. Second Dist., Div. One. May 14, 1973.]

ARUBA BONAIRE CURACAO TRUST COMPANY LIMITED,
Plaintiff and Appellant, v.
UNITED CALIFORNIA BANK, Defendant and Respondent.

**COUNSEL**

Gerald B. Ames, Elaine B. Fischel and Daniel J. Parks for Plaintiff and Appellant.

Donnelly, Clark, Chase & Haakh for Defendant and Respondent.

**OPINION**

**LILLIE, J.**—Plaintiff, as assignee of Thomas C. McMillan, sought a judicial declaration that it was entitled to certain shares of stock and money ($25,000) held by defendant bank (UCB) pursuant to a general pledge agreement executed and delivered to UCB by McMillan; in a separate cause of action alleging conversion, it also demanded the return of such assets. UCB having subsequently disclaimed any interest in the

stock, this appeal is from that portion of the judgment in defendant's favor relative to the ownership of the money.

■ Inasmuch as the appeal is taken on the clerk's transcript and certain exhibits, we treat it as an appeal on the judgment roll. (*Kopf* v. *Milam,* 60 Cal.2d 600, 601 [35 Cal.Rptr. 614, 387 P.2d 390].) Accordingly, we must presume that substantial evidence supporting the findings was adduced, and are confined to the question whether the judgment is supported by the findings and whether reversible error appears on the face of the record. (*Millbrae Assn. for Residential Survival* v. *City of Millbrae,* 262 Cal.App.2d 222, 226 [69 Cal.Rptr. 251].) Therefore, the following summary is based on only those facts appearing in the court's findings. (*Bristow* v. *Morelli,* 270 Cal.App.2d 894, 896 [76 Cal.Rptr. 203].)

In November of 1964, to secure payment of the balance due on a series of loans made to him by UCB (as well as his guarantee of a loan to a third party), McMillan executed a general pledge agreement consisting of a voting trust certificate representing 60,000 shares of Fidelity Bank stock. The agreement secured the payment of any and all of McMillan's obligations to UCB then existing or thereafter incurred. In April of 1965 McMillan delivered to UCB his written guarantee whereunder he guaranteed payment of a note executed by Erwan Country Club payable to UCB in the sum of $315,000; said note was secured by a first trust deed in UCB's favor covering certain real property in San Bernardino County and (the court found) by the stock pledged to UCB. Thereafter, in December of 1965, McMillan assigned and transferred certain assets to plaintiff in consideration of an annuity payable by plaintiff to McMillan; included in the assets thus assigned was McMillan's interest in the stock held by UCB. Plaintiff accepted such assignment with knowledge of UCB's prior interest therein under the general pledge agreement although, it was further found, plaintiff made no inquiry from UCB as to the extent or amount of McMillan's obligations to UCB under the pledge agreement, nor did the latter make any representations of any kind in this regard.

In March of 1967, at plaintiff's request, UCB's lawyer prepared and delivered to plaintiff for its execution a corporate resolution authorizing plaintiff to hypothecate personal property to secure payment of McMillan's obligations to UCB, not exceeding the aggregate sum of $347,000. While this sum accurately represented the amount due on prior loans, it erroneously did not include the obligation incurred by McMillan's guarantee of the Erwan Country Club loan ($315,000). The court found that plain-

tiff "was notified of the error . . . as soon as [it] was discovered, and within a reasonable time after said corporate resolution had been delivered" by UCB to plaintiff. The court further found that plaintiff's rights to the stock were fixed as of December 15, 1965 (the date of McMillan's assignment and plaintiff's agreement to furnish him an annuity) and the delivery of the corporate resolution with its erroneous dollar figure did not enlarge, diminish or change the extent of plaintiff's interest in the pledged stock,

In October of 1967, at plaintiff's request, a portion of the stock held by UCB was sold, and the proceeds used to pay all of McMillan's obligations to UCB except that evidenced by his written guarantee of the Erwan Country Club note; thereafter UCB still held 7,350 shares of stock and $25,000 (in the form of a cashier's check) pledged to it under the agreement. In October of 1969 UCB cashed the above check in partial payment of McMillan's guarantee of the Erwan note which was then in default; in September of 1971, by nonjudicial sale empowered under the deed of trust, UCB sold Erwan's property and used the proceeds to satisfy its remaining claims against McMillan. (UCB subsequently disclaimed any interest in the remaining shares of stock [7,350 in all].)

As appears from the clerk's transcript, this action was commenced on December 17, 1968, prior to UCB's use of the cashier's check (pursuant to McMillan's guarantee) in partial payment of the Erwan obligation, and prior to the nonjudicial sale of Erwan's property pursuant to the power of sale under the deed of trust (likewise covered by McMillan's guarantee) —plaintiff's ignorance of the above two transactions is demonstrated by the allegations in its complaint which make no mention thereof. As McMillan's assignee and assertedly, therefore, a successor-guarantor of the Erwan obligation, plaintiff now contends that the determinations reached in *Union Bank* v. *Gradsky,* 265 Cal.App.2d 40 [71 Cal.Rptr. 64], and said to govern here, should be retroactively applied. In *Gradsky,* plaintiff bank made a construction loan to a property owner which was secured by a first trust deed on the property; as additional security for the loan, defendant general contractor guaranteed the property owner's note. When the note was not paid on its due date, the bank caused the property to be sold at a trustee's sale, and bid in the property; it then brought suit against defendant on his guaranty to recover the amount remaining unpaid after the sale. It was concluded that the bank was estopped from seeking judgment against the independent guarantor for the reason that resort to a nonjudicial sale of the security, instead of electing one of the other two options

upon the principal debtor's default,[1] had destroyed the guarantor's right to subrogation. Said the court: "Upon the Bank's electing to pursue a remedy which destroys both the security and the possibility of the surety's reimbursement from the principal debtor, the creditor is thereafter estopped from pursuing the guarantor for a deficiency following a nonjudicial sale of the security. The result follows not because section 580d of the Code of Civil Procedure prevents recovery of a deficiency judgment against the guarantor, but because the section prevents a deficiency judgment by the guarantor against the debtor." (*Supra,* pp. 46-47.)

While plaintiff concedes that *Gradsky* involved an action against the guarantor *after* consummation of the nonjudicial sale, it claims there appears to be no reason to distinguish that case and the one at bar; the net effect, it argues, is the same since, as successor-guarantor, it has been deprived of subrogation rights against the principal debtor. A further argument for the retroactive application of *Gradsky* to this case is predicated on the estoppel rationale of that decision.[2] Principally because of the limited record on this appeal, and plaintiff is bound by its election to proceed on the judgment roll alone, we hold that *Gradsky* does not control the determination of this controversy.

First, in addition to other conclusions therein reached, *Gradsky* adheres to the settled rule that a guarantor by express contract can either waive or be estopped to raise the "No deficiency judgment" provisions of section 580d, Code of Civil Procedure: "Since Max's rights in this respect do not rest on section 580d itself, as we have previously pointed out, he can by express contract or by his subsequent actions either waive or be estopped from raising his defense to the creditor's action to recover any deficiency after a nonjudicial sale." (*Union Bank* v. *Gradsky, supra,* 265 Cal.App.2d 40, 48.) In the instant proceeding the trial court found that plaintiff's rights to the stock were fixed as of the date of McMillan's assignment

---

[1] The bank could have (a) brought a judicial foreclosure sale against the principal debtor and the guarantor or (b) it could have sued the guarantor for the full amount under the note.

[2] "The creditor's recovery is not directly barred by section 580d of the Code of Civil Procedure. It is barred by applying the principles of estoppel. The estoppel is raised as a matter of law to prevent the creditor from recovering from the guarantor after the creditor has exercised an election of remedies which destroys the guarantor's subrogation rights against the principal debtor. The destruction of the guarantor's subrogation rights follows from the combination of the creditor's election to subject the security to nonjudicial sale and the operation of section 580d, which prevents both the creditor and the guarantor from obtaining any deficiency judgment against the debtor after nonjudicial sale of the security." (*Supra,* p. 41.)

(December 15, 1965) and were not changed thereafter by any action on the part of UCB or any other party. The form of record being what it is, we have no way of knowing what other evidence the court considered in reaching the above finding; we assume that there was substantial evidence to justify this crucial finding which could have been predicated upon an explicit waiver by McMillan in his guarantee of the Erwan obligation of any defense based upon the election of remedies (unlike the situation in *Gradsky*). Too, although plaintiff now asserts that injunctive relief would have been sought if advance notice had been given of UCB's intended use of the money ($25,000), it manifested a complete disinterest in its subrogation rights during the years following December 15, 1965, even though the general pledge agreement (part of the record on this appeal) gave UCB the right, upon McMillan's default, "to realize upon any property which is security hereunder in such priority as [it] may elect."

Second, and more important, the $25,000 realized by UCB some two years prior to the nonjudicial sale and for which plaintiff presently seeks reimbursement, does not (and could not) represent any deficiency following such sale. Indeed, *Gradsky* squarely supports this conclusion: "An action by the Bank against Max before any resort to the security is neither an action on 'a note' nor is it an action to recover a 'deficiency.' The action is on the guarantee, not on the note, and in the absence of either judicial or nonjudicial foreclosure of the security, there exists no 'deficiency.'" (*Supra,* p. 44.) Accordingly, if UCB had instituted an action on the guarantee (instead of proceeding as it did), it could not have been properly contended that section 580d barred any claim thus asserted; by the same process of reasoning, UCB cannot now be estopped from realizing on the money which it applied in the manner here indicated. In short, an extension of the *Gradsky* decision to the facts at bar urged by plaintiff is wholly unwarranted.

Finally, and significantly, in its closing brief plaintiff concedes that "California law generally suggests the technical legality of what UCB did." It argues, however, that equity would be better served by an appellate determination that UCB should have given advance notice of its intention to apply the pledged assets. It thus repeats the rather novel contention in its opening brief that there was some sort of fiduciary relationship between it and UCB, two banking institutions, pursuant to which plaintiff relied on UCB's integrity and good faith; too, by virtue of such relationship, UCB held the money as a constructive trustee for plaintiff. While it may be

enough to note that no authority is cited for the above propositions as they involve banks, we further observe (in light of the limited record elected by plaintiff) that such points are raised for the first time on appeal; in such circumstances, they do not warrant favorable consideration.

That portion of the judgment from which this appeal is taken, is affirmed.

Wood, P. J., and Thompson, J., concurred.