[Civ. No. 46392. Second Dist., Div. Three. Dec. 30, 1975.]

STANLEY FITCH, Plaintiff and Appellant, v.
PACIFIC FIDELITY LIFE INSURANCE COMPANY et al.,
Defendants and Respondents.

142

**COUNSEL**

David L. Caplan for Plaintiff and Appellant.

Agnew, Miller & Carlson, Thomas J. Ready, Samuel R. Pryor, Tarlow & Tarlow and Melvin I. Tarlow for Defendants and Respondents.

**OPINION**

**COBEY, Acting P. J.—** ▮ ▮▮▮ Stanley Fitch appeals from a judgment for respondents Pacific Fidelity Life Insurance Company

(hereinafter called "Pacific") and Manny Silberman following a trial to the court. The appeal lies. (Code Civ. Proc., § 904.1, subd. (a).)

Appellant contends that the trial court erred in enforcing an agreement (hereinafter sometimes called "termination assignment agreement") between himself and both respondents assigning to Silberman commissions on insurance policies which accrued following the termination by respondents of his position as an insurance salesman for them. The total of such commissions whose assignment is contested herein is $9,720.83.

Appellant contends that the termination assignment agreement is unenforceable because (a) respondents furnished no consideration for it; (b) there was mutual uncertainty as to the operation of the assignment at the time the agreement was made; (c) a material term of the agreement was unilaterally altered by respondents after its execution; and (d) the agreement failed to conform to the requirements of Labor Code section 300.

We conclude from an examination of these contentions that they are without merit. Therefore we will affirm the judgment.

## STATEMENT OF FACTS[1]

On June 2, 1969, appellant, who had been a licensed insurance agent for approximately 15 years, entered into certain written agreements with respondents.[2] Pursuant to these agreements, appellant was to be given the opportunity to sell to the public Pacific's insurance policies and Pacific agreed to and did later advance to appellant a draw against his commissions. Appellant was to begin his sales efforts in a training period of unspecified duration during which time he would receive no commissions. If appellant's training period was successful, he and the respon-

---

[1]This appeal is based upon only the clerk's transcript and, as such, is considered to be upon the judgment roll alone. (*Aruba Bonaire Curacao Trust Co.* v. *United California Bank*, 32 Cal.App.3d 281, 283 [107 Cal.Rptr. 924].) Hence the trial court's findings of fact and conclusions of law are presumed to be supported by substantial evidence and are binding upon us, unless the judgment is not supported by the findings or reversible error appears on the face of the record. (*Bristow* v. *Morelli*, 270 Cal.App.2d 894, 896, 898 [76 Cal.Rptr. 203].) Accordingly, our statement of facts is taken from these findings and conclusions.

[2]The documents with which this appeal is concerned are principally the "Pre-Contract Training Notification" and the "Assignment of Commissions Upon Termination." Pursuant to California Rules of Court, rule 10 (b), we have ordered both exhibits transmitted to this court.

dents would execute an "agent's agreement" after which time appellant would receive commissions from his sales of policies.

Silberman, Pacific's "general agent," agreed to and did advance to appellant $11,000 for promotional expenses incurred by appellant in his sales solicitations. To insure repayment of these advances, appellant on the aforementioned June 2, 1969, assigned to respondent Silberman all commissions from policies to be sold by appellant which would accrue after his termination—should it occur—as a salesman for respondents. On September 24, 1969, with his training period successfully completed, appellant and respondents signed the "agent's agreement."[3]

The trial court specifically found that appellant read, understood and signed all of the documents referred to above. It further stated that these arrangements were consistent with appellant's and respondent Silberman's experience in the insurance industry.

On April 12, 1973, respondents duly notified appellant that he was terminated as their salesman. Subsequent to this date and pursuant to the termination assignment agreement, Pacific paid Silberman $6,964.72 from appellant's commissions accruing after his termination. Pacific retained another $2,756.11 from these commissions which the trial court ordered paid to Silberman.

## DISCUSSION

I. *The Termination Assignment Agreement Was an Enforceable Contract.*

■ Appellant first asserts that the agreement is unenforceable according to traditional principles of contract law. None of these arguments need long detain us. Our statement of facts clearly sets out respondents' basic consideration for the assignment: the opportunity for appellant to sell Pacific insurance policies and the provision of certain expenses.[4] The fact that appellant was asked on June 2, 1969, to assign to Silberman commissions which he had not yet earned in no way rendered

---

[3] This document was admitted into evidence as plaintiff's exhibit 8. Again, pursuant to California Rules of Court, rule 10 (b), we have ordered it transmitted to this court.

[4] The recitals of consideration in the agreement are prima facie evidence of consideration. (*Podesta* v. *Mehrten,* 57 Cal.App.2d 66, 71 [134 P.2d 38].) Appellant, as the party having the burden of proof to show an absence of consideration (Civ. Code, § 1615), simply failed to meet that burden.

the operation of the assignment uncertain.[5] Pacific's claimed alteration of the termination assignment agreement was merely the accurate completion of the document by inserting the date on which appellant became an "agent" of respondents and began to earn commissions which were possibly subject to assignment.[6] Thus the agreement, in traditional contract analysis, was valid and enforceable.

## II. Labor Code Section 300 Did Not Apply to the Termination Assignment Agreement.

Appellant's major claim is that the assignment at issue dealt with his "wages and salary" within the meaning of Labor Code section 300. Were appellant correct, the agreement would be invalid as it fails to meet a number of the section's rigorous requirements for such assignments.[7] Appellant uses two separate theories in attempting to establish the applicability of section 300 to the instant case: (1) that he was an employee and not an independent contractor and (2) that even an independent contractor cannot assign his income except in accordance with the statute.

### A. Appellant Was an Independent Contractor and Not an Employee.

■ Appellant's argument that he was an employee of respondents is directly contradicted by the trial court's findings of fact and conclusions of law, which are amply supported by the evidence. As did the trial court, we consider the following facts to be determinative of this issue: appellant was substantially free of Silberman's control and altogether free of control by Pacific Fidelity; he was free to sell other brands and types of insurance; he was independently licensed; and he was not

---

[5]Appellant claims that he reasonably thought the agreement concerned commissions earned during the training period. Such a belief is unreasonable because the Pre-Contract Training Notification which appellant signed specifically stated that he would receive "no commissions" at all as a trainee.

[6]Pacific inserted in the assignment document the date that the parties intended to specify (namely, the date of the agent's agreement). That exact date was necessarily unknown when the termination assignment agreement was signed. In such circumstances, appellant gave implied consent to the insertion. (See Rancho San Carlos v. Bank of Italy, etc., 123 Cal.App. 291, 295 [11 P.2d 424]; Rest., Contracts, § 442 (1) and (2).)

[7]Section 300 states that "[n]o assignment of, or order for wages or salary, earned or to be earned, shall be valid unless" a number of formalities and limitations are observed. These include the requirements of a spouse's written consent and notarization, plus a flat prohibition of assignment of future earnings in excess of 50 percent of the total. Respondents do not claim that the assignment agreement in question complied with section 300.

covered by respondents' workers' compensation payments. Further, the court found that appellant had agreed that his legal status was that of independent contractor. These indications of autonomy are more than adequate to support the court's finding. (See *Dorsic* v. *Kurtin,* 19 Cal.App.3d 226, 238 [96 Cal.Rptr. 528]; *McDonald* v. *Shell Oil Co.,* 44 Cal.2d 785, 788 [285 P.2d 902].)

### B. *Section 300's Applicability to Independent Contractors in General and Appellant in Particular.*

■ Since an independent contractor cannot also be an employee (Rest. 2d Agency (1958) § 2, coms. b & c, pp. 13-14), our inquiry is reduced to this: does Labor Code section 300 apply to assignments by independent contractors of their income? We begin with the statute's history. Its origin can be traced to former section 955 of the Civil Code. (Stats. 1913, ch. 287, § 1, p. 537.) This section, now repealed (Stats. 1937, ch. 90, § 8100, p. 328), prohibited the unwritten assignment of "wages or salary" and required the written consent of the assignor's spouse, if any. In addition, the section prohibited the assignment of wages or salary not yet earned except for "necessities of life." When the Labor Code was created in 1937, section 955 became sections 300-304 of the new code. (Stats. 1937, ch. 90, §§ 300-304, p. 202.) In 1941, the statute was rewritten and placed in its present form and location. (Stats. 1941, ch. 529, § 5, p. 1851.)

We hold that it was never the intent of the Legislature to include within the ambit of section 300 or its predecessor statutes the earnings of an independent contractor. Despite the long-established distinctions between an employee and an independent contractor (see, e.g., *Connell* v. *Harris,* 23 Cal.App. 537, 541 [138 P. 949]), the Legislature in drafting and amending section 300 used language strongly suggesting its applicability only to the former. First, the more sweeping language regarding wages, that appears in section 200, was not used.[8] Second, the use of "wages and salaries" as opposed to more comprehensive terms such as "earnings" or "income" suggests a limitation to employees. Third, unlike other sections of the same code, the Legislature chose not to refer to

---

[8]Section 200 reads in part as follows: "As used in this article: (a) 'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation." As appellant points out, however, section 200 defines only the term "wages" and specifically limits its applicability to "this article" (i.e., Lab. Code, §§ 200-230) and so cannot control our interpretation of section 300. (Cf. *First National Bank of Vista* v. *Hellen* (9th Cir. 1968) 392 F.2d 58, 59-60.)

"employees" and "independent contractors" in either the conjunctive or disjunctive. (Cf. Lab. Code, §§ 3357 and 2667.) Fourth, subdivision (f) of the section provides that a copy of the assignment is to be filed with the assignor's "employer," thus indicating (1) that the assignor is an "employee" and (2) that he has one employer, whereas an independent contractor frequently works for a number of persons or entities.

The aforementioned *First National Bank of Vista* v. *Hellen, supra,* 392 F.2d 58, is in accord with this interpretation. In that case, the district court had made no findings as to whether the assignor of group insurance commissions was an employee or an independent contractor. But because the lower court found that the income involved was "wages" within the meaning of section 300, this necessarily meant that the assignor was an employee rather than an independent contractor. (*Id.,* at p. 59.) The instant case suggests the mirror image of *Hellen*'s reasoning: since the record here clearly indicates that appellant was an independent contractor, his income should not be considered wages within the meaning of section 300.[9]

Wholly aside from the question of section 300's applicability to independent contractors, we believe that extending the section's protection to appellant under the facts of the instant case would be contrary to the remedial intention of the legislation. There can be no doubt as to what that purpose is: "[T]o protect wage earners and salaried workers against the possibility that, either from improvidence or under the stress of immediate necessity, they may go too far in sacrificing the future to the needs or desires of the present and leave themselves and their families without future means of support." (*Lande* v. *Jurisich,* 59 Cal.App.2d 613, 617 [139 P.2d 657].)

We do not think appellant belongs to this class of improvident or necessitous wage earners who are pressured into borrowing against future income in order to make current purchases. He was an experienced insurance salesman who knowledgeably signed standard agreements that authorized the assignment of future commissions after his

---

[9]Our holding that independent contractors are not covered by section 300 admittedly conflicts with that of *Reynolds* v. *Reynolds,* 14 Cal.App.2d 481, 483 [58 P.2d 660]. There this court held that an attorney's fees for refereeing condemnation proceedings were wages or salary within the ambit of Civil Code section 955. *Reynolds,* however, was decided before the wage assignment procedures were placed in the Labor Code. As noted above, certain provisions of that code shed new light on the scope of the legislation (e.g., § 300, subd. (f), and § 200, discussed above). In any event, the alternate basis for our decision in this case, that the remedial purpose of the statute must be considered in determining its applicability, is in full accord with *Reynolds. (Id.,* at p. 484.)

termination as a method of recouping advances made to him.[10] The assignment was in fact a prerequisite to appellant's ability to earn any income at all as an insurance salesman for respondents. Section 300 itself recognizes a comparable distinction in subdivision (f) which exempts from its requirements salary deductions for "goods and services furnished by the employer . . . at the request of the employee." Similarly, we are here concerned with promotional expenses provided to appellant by Silberman.

■   Remedial and protective statutes will be liberally interpreted to advance their clear purposes. (*Lande* v. *Jurisich, supra,* 59 Cal.App.2d at pp. 616-617; *Reynolds* v. *Reynolds, supra,* 14 Cal.App.2d at p. 484.) The same liberality, however, is not extended to those who seek to use the penalties of such statutes as a sword rather than a shield, i.e., when they are not victims of the sharp practices against which the legislation is aimed.[11] (Cf. *Buck* v. *Dahlgren,* 23 Cal.App.3d 779, 791 [100 Cal.Rptr. 462]; *Barnes* v. *Hartman,* 246 Cal.App.2d 215, 224 [54 Cal.Rptr. 514].)

We therefore hold that the assignment agreement between appellant and respondents at issue was a valid, enforceable contract and that Labor Code section 300 does not apply thereto.

## DISPOSITION

The judgment is affirmed.

Allport, J., and Potter, J., concurred.

A petition for a rehearing was denied January 28, 1976.

---

[10]In this regard, we find it illuminating to quote from the trial court's findings of fact: "Plaintiff was not necessitous, nor was he otherwise under any pressure of an economic character to become a 'sub-agent' of [Pacific]. Plaintiff then had an opportunity, based on his fifteen years' experience in the insurance industry, to select the insurance company (or companies) for whom he would write policies and from whom he would received [*sic*] commissions. Faced with that choice, he voluntarily chose Silberman and [Pacific]."

[11]We believe this was the operative principle behind the Supreme Court's cryptic conclusion in *Bradley* v. *Superior Court,* 48 Cal.2d 509, 516-517 [310 P.2d 634], that a husband's promise to pay 40 percent of his future net income to his wife as part of a property settlement agreement was not an assignment within the meaning of section 300. Given the original purpose of the legislation—to protect wives from the profligate assignments of their husbands—there would be no sense in allowing a husband to utilize the section to the unfair disadvantage of his wife. (See also *Berg* v. *Standard Light Co. of Cal.,* 89 Cal.App. 542, 545 [265 P. 369].)