CENTRAL NATIONAL BANK OF WAUSAU,
Plaintiff-Appellant,

v.

Bettie DUSTIN, Defendant-Respondent.

Court of Appeals

*No. 81–979.  Submitted on briefs December 2, 1981.—Decided May
11, 1982.*
(Also reported in 321 N.W.2d 321.)

For the appellant there were briefs by *Bachhuber Law Offices* and *Coleen H. Kennedy* of Wausau.

For the respondent there was a brief by *Crooks, Low & Connell, S.C.,* and *Peter C. Gunther* of Wausau.

Before Foley, P.J., Dean and Cane, JJ.

DEAN, J.   Central National Bank of Wausau (CNB) appeals from a judgment that declared invalid an assignment of insurance renewal commissions executed by James H. Dustin because the assignment was not co-signed by his wife or otherwise in compliance with sec. 241.09, Stats.  CNB argues that insurance renewal commissions are not "wages" or "salary" for purposes of the wage assignment statute.  CNB separately contends that the court is without jurisdiction to order United American Insurance Company, the holder of the commissions, to pay the commissions to Bettie Dustin.[1]  Because we conclude that sec. 241.09 applies and that CNB is without standing to raise United American's objection, we affirm.

In February, 1977, James executed an assignment of insurance renewal commissions to CNB.  The assignment provided in part:

For valuable consideration, I the undersigned agent do hereby assign and transfer to: Central National Bank of Wausau . . . the net proceeds of my renewal account

---

[1] Bettie Dustin also contends that the assignment is void for indefiniteness.  We do not reach the issue because of our disposition of the other issues.

that may hereinafter accrue under my Special Home Office General Agent's Contract with the UNITED AMERICAN INSURANCE COMPANY . . . subject . . . to all present and future indebtedness due the Company, beginning with the month of March 1, 1977, and continuing until released by the aforenamed assignee . . . not to exceed the sum of: entire check . . . .

[/s/] James H. Dustin
AGENT

The assignment form did not provide for a spouse's signature or for witnesses of that signature. James died in October, 1979, and United American stopped making payments to CNB after receiving demands for payment from Bettie Dustin, James's spouse. At the time CNB commenced its action for declaratory judgment $7,175.51 remained owing and, through June, 1980, the insurance company accumulated $2,742.55 commissions.

The issue dispositive of the merits is whether insurance renewal commissions[2] are salary or wages for purposes of sec. 241.09.[3] No existing Wisconsin case law decides

---

[2] When an insurance agent sells an insurance policy, the insurance company pays to the agent part of the premium as a commission. An agent's contract with the company may provide for the insurance company to pay additional commission when an insured remits to the company a premium renewing an existing policy. Commissions paid upon the insured's renewal premium payment are renewal commissions. *Cf. Lee v. WPS*, 76 Wis. 2d 353, 356, 252 N.W.2d 24, 25 (1977) (where an agent's contract provided for additional commissions on a group health policy continuing in force).

[3] Section 241.09, Stats., provides:

Assignment of wages. No assignment of the salary or wages of any married person is valid for any purpose unless the assignment is in writing signed by the person's spouse, if the spouse at the time is a member of the family, and unless the spouse's signature is witnessed by 2 disinterested witnesses. No assignment of the salary or wages of any person is valid as to any such salary or wages accruing more than 6 months after the date of the

this question. The terms "wages" and "salary" are sometimes used synonomously with "compensation" or "earnings,"[4] and other times are used in a narrower sense to connote only regular payments to employes for labor.[5] It is ambiguous whether wages or salary include insurance renewal commissions.[6] The interpretation of a statute is a question of law, and we review the question presented without deference to the reasoning of the trial court.[7] In construing a statute, first resort is to the language of the statute itself.[8] When a statute is ambigu-

making of the assignment, except that any assignment of wages made in connection with a proceeding under s. 128.21 shall run concurrently with the period during which the amortization proceedings are in effect and shall become void upon the dismissal of the proceedings. Nothing in this section shall apply to assignments made under s. 109.09 or ch. 767, nor to any authorization from an employe to an employer directing deductions from wages to accrue in the future for union or employe club dues, insurance or annuities, war bond purchases, a revocable and voluntary deduction to a credit union or a state chartered financial institution operated primarily for the benefit of the employes of any particular employer or other financial institution under s. 705.01(3), for contributions to the American Red Cross, a community fund or other similar charity, or any indebtedness to the employer. No assignment of salary or wages or voluntary deduction which is permitted under this section shall be valid if prohibited by s. 422.404.

[4] See 23 Op. Att'y Gen. 136 (1934).

[5] See Black's Law Dictionary 456, 1416 (5th ed. 1979), which, in its definition of earnings, states that earnings is a broader term than wages.

[6] See Wirth v. Ehly, 93 Wis. 2d 433, 441, 287 N.W.2d 140, 144 (1980) (a term capable of being understood by reasonable persons in either of two senses is ambiguous).

[7] Roe v. Larson, 94 Wis. 2d 204, 206, 287 N.W.2d 824, 825 (Ct. App. 1979), rev'd on other grounds, 99 Wis. 2d 332, 298 N.W.2d 580 (1980).

[8] State v. Derenne, 102 Wis. 2d 38, 45, 306 N.W.2d 12, 15 (1981).

ous, we seek to construe a statute in light of its purpose to achieve the object intended by the legislature.[9]

We conclude that insurance renewal commissions are within the protective scope of sec. 241.09. When read broadly, the ordinary meaning of wages encompasses commissions. For example, Webster's Third New International Dictionary 2568 (1976), defines wage as "a pledge or payment . . . often including . . . commissions . . . ." Other statutory definitions include commission within the scope of the term wage. Section 109.01(3), Stats., provides in part: " 'wage' or 'wages' mean remuneration payable to an employe for personal services, including . . . commissions . . . ."[10] Although these definitions do not control our determination, it is requisite to our decision that the ordinary meaning of wages includes commissions.

CNB contends that insurance renewal commissions are not wages because they are not within the definition of earnings in sec. 421.301(18), Stats. CNB points out that earnings is a broader term than wages or salary and reasons that commissions must be excluded by the narrower term since they are excluded by the broader term. Section 421.301(18) provides:

"Earnings" means compensation paid or payable to an individual or for his account for personal services rendered or to be rendered by him, whether denominated as wages, salary, commission, bonus or otherwise, and includes periodic payments pursuant to a pension, retirement or disability program. "Earnings" does not include renewal commissions payable to a licensed insurance agent.

[9] *Berns v. WERC,* 99 Wis. 2d 252, 265, 299 N.W.2d 248, 255 (1980).

[10] Section 109.01(3), Stats., is relevant to § 241.09, Stats., because it defines wages for purposes of § 109.09, and assignments under § 109.09 are an express exception to § 241.09. Other broadly written statutory definitions of wages can be found in §§ 71.19 (1), 104.01(3) and 108.02(6), Stats.

This exclusion of renewal commissions from earnings is not the result of statutory interpretation; instead, the legislature excluded them expressly. That the legislature excluded them expressly suggests that, without express exclusion, renewal commissions would be within the meaning of earnings. It does not follow that the legislature intended to exclude commissions from sec. 241.09 merely because commissions are excluded from earnings for purposes of the Wisconsin Consumer Act. For renewal commissions to be within the meaning of wages is consistent with their being within the meaning of earnings. Indeed, we can infer from the express exclusion of sec. 421.301(18) that the legislature would have expressly excluded renewal commissions from sec. 241.09 if the legislature so intended.

We should construe remedial legislation broadly to achieve its purpose.[11] The purpose of sec. 241.09 is to protect spouses and dependents of wage earners from the wage earner's alienating future earnings, which may be needed for necessities, without consent of the spouse and in general to discourage assignment of future wages.[12] We can view renewal commissions as either deferred compensation for the original insurance sales or as an incentive for agents to provide continued service on their contracts. In either view, the agent receives a commission from an insurance company as compensation for his services on their behalf. To the agent, commissions are a basic means of support, and to the spouse and dependents, the commissions are the means of livelihood.

CNB argues that Sec. 241.09 should not apply to insurance renewal commissions because dependents of in-

---

[11] *City of Madison v. Hyland, Hall & Co.*, 73 Wis. 2d 364, 373, 243 N.W.2d 422, 427 (1976).

[12] The statute's purpose to protect a wage earner's family is made clear by its requirement of the spouse's signature and two witnesses, and see *Porte v. Chicago & N.W. Ry. Co.*, 162 Wis. 446, 449, 156 N.W. 469, 471 (1916).

surance agents are not likely to be deprived in the same way that wage-earning laborers are deprived. Even if construed as CNB suggests, sec. 241.09 would not only apply to low paid employes. Highly compensated corporate employes earn salaries that are subject to sec. 241.09. CNB's construction of the statute would protect spouses of highly compensated employees. Yet, many insurance agents earn far less than highly compensated employes. We are not persuaded by CNB's argument that insurance commissions should not be subjected to sec. 241.09 because spouses and dependents of insurance agents are not in need of protection.

The facts in this case present a strong case for including commissions under the protective scope of sec. 241.09. Bettie Dustin is a member of the class that the statute seeks to protect. This case is not a case where the assignor seeks to use the statute to invalidate an assignment after receiving the benefits of a bargain,[13] nor is it necessary to deprive Bettie of the statute's protection in order to avoid unwanted results in other factual situations.[14]

From a review of decisions in other jurisdictions, we conclude that no one statutory interpretation of similar statutes enjoys the overwhelming weight of authority. The Oklahoma Supreme Court interpreted the term earnings to include renewal commissions.[15] The courts of California and Colorado have stated that whether renewal commissions are wages depends upon whether the agent

[13] *Cf. Fitch v. Pacific Fid. Life Ins. Co.*, 54 Cal. App. 3d 140, 148, 126 Cal. Rptr. 445, 450 (Cal. Ct. App. 1975) (where the agent sought to invalidate his assignment for his own benefit).

[14] *Cf. Shearer v. Dunn County Farmers Mut. Ins. Co.*, 39 Wis. 2d 240, 248, 159 N.W.2d 89, 93 (1968) (on grounds of public policy the law does not permit a man to profit from his own wrong).

[15] *First Nat'l Bank v. Brown*, 579 P.2d 825, 826–27 (Okla. 1978).

is an employe or an independent contractor.[16] A Massachusetts court and a federal district court interpreting Arkansas law have concluded, without explanation, that commissions are not wages.[17] We are not persuaded by these authorities on a question of Wisconsin law. We conclude that insurance renewal commissions are wages for purposes of sec. 241.09. Since the assignment did not conform to the statutory requirements, the trial court correctly determined that it was invalid.

CNB also argues that the court lacks jurisdiction over United American and that Bettie should be denied relief for failure to join the company as a necessary party. United American is clearly not a party to this action; however, CNB has no legal interest affected by the trial court's order that United American pay to Bettie Dustin the accumulated renewal commissions. CNB is without standing to raise an issue on United American's behalf.[18]

*By the Court.*—Judgment affirmed.

[16] *First Nat'l Bank v. Hellen,* 392 F.2d 58, 59–60 (9th Cir. 1968); *Fitch,* 54 Cal. App. 3d at 146–48, 126 Cal. Rptr. at 449–50; *Crepeau v. Renewal Guar. Corp.,* 29 Colo. App. 23, 478 P.2d 698, 701–02 (1970). CNB has stipulated that James Dustin was an employe of United American. We do not decide whether § 241.09 would apply if the trial court had found, as fact, that Dustin was an independent contractor.

[17] *Union Life Ins. Co. v. Perkins,* 257 F. Supp. 154, 157–58 (E.D. Ark. 1966); *Dunn v. Holladay,* 372 N.E.2d 286, 287 (Mass. App. 1978).

[18] *La Crosse Trust Co. v. Bluske,* 99 Wis. 2d 427, 428, 299 N.W.2d 302, 303 (Ct. App. 1980).