LEE, Respondent, v. WISCONSIN PHYSICIANS SERVICE
(WPS), Appellant.

*No. 75–145. Submitted on briefs February 2, 1977.—
Decided March 15, 1977.*
(Also reported in 252 N. W. 2d 24.)

For the appellant the cause was submitted on the briefs of *John P. Desmond* and *Murphy, Stolper, Brewster & Desmond, S. C.* of Madison.

For the respondent the cause was submitted on the brief of *Richard E. Rosenberg* and *Nowlan, Mouat, Lovejoy, Wood & Cripe* of Janesville.

CONNOR T. HANSEN, J. The parties stipulated to the facts. Lee is an insurance agent with his office in Janesville, Wisconsin. In 1962, he entered into a written agency agreement with WPS. It was renewed at various times. The agreement out of which this litigation arose, provided in part:

"Section I   Authorization . . .

"(1) The Agent shall have the authority to procure applications for WPS sickness care contracts providing surgical, medical, hospital and other related benefits; to procure renewals of outstanding coverage originally secured by him; to communicate with and provide service to prospective and actual subscribers; and to secure and preserve public good will toward WPS. . . .

"(2) . . .

"(3) The Agent shall have no exclusive right to represent WPS.

"Section II   Compensation

"Compensation to the Agent shall be computed and paid as set forth below. . . .

"(1) WPS shall pay to the Agent, each month, the balance of credits in the Agent's commission account as compensation for the Agent's services.

"(2) Accruals of commissions shall be determined by applying the rates shown in the 'Commission Schedule,' to premiums as they are received and accepted by WPS on business procured by the Agent.

"(3) . . .

"(4) . . .

"(5) . . .

"(6) The following acquisition and renewal commissions shall apply to the class of business indicated, written for WPS by the Agent. The classes by business listed

below are as defined by WPS in the Underwriting rules which are in effect at the time such coverage is written. The 'Commission Schedule' shown is subject to modification by WPS by amendment hereto, upon sixty (60) days written notice to the Agent.

" . . .

"Section IV    Termination

" . . .

"(3) Upon termination by WPS for other than a violation of this Agreement, commissions on business procured by the Agent, before termination and continuing in force shall accrue for a three (3) year period following termination, in the manner provided in Section II."

On or about May 13, 1969, while an agent for WPS, Lee solicited and obtained from Milton College a letter appointing him as its agent of record for purposes of its group employee benefits program. During the summer of 1969, he negotiated and obtained an agreement for a student health plan between the college and WPS, which plan became effective September 1, 1969, for a period of one year. The total earned premium for the plan was $21,507. In accordance with a verbal agreement between Lee and Herbert Dornfeld, agency manager of WPS, and *not* based upon the commission schedule in the original agency agreement, WPS paid Lee a total commission of 10 percent, or $2,150.53, for his initial procurement of the plan. Such a commission was consistent with the special practice of WPS on student health plans.

Subsequent to Lee's procuring the initial plan with the college, all further negotiations for renewal of it were between WPS and the college. Such procedure was in accordance with established practice and custom because WPS used an experience-rating factor in determining premium rates for groups of this size.

The WPS sales personnel proposed several renewal plans to the college for 1970–71. All contained a "loading factor" of 10 percent in the premium rate to cover Lee's commission. WPS took the position that the "loading

factor" was necessary because of Lee's status as agent of record for the college. The college rejected all such proposals and ultimately notified WPS that it would prefer to deal directly with WPS and thus avoid the necessity of such "loading factor" for the agent's commission in the premium rate. By letter dated September 4, 1970, the college informed Lee that it was rescinding its previous agent-of-record letter and was henceforth going to deal directly with WPS.

WPS then directly offered a new proposal to the college which the college accepted for the period from September 10, 1970, through September 6, 1971. It was the same as one of the proposals previously rejected by the college except that the premium was reduced by 10 percent because of the absence of the agent's commission "loading factor." WPS paid no commission to Lee for the plan negotiated with the college for 1970–71. WPS dealt directly with the college in respect to the student health plan for the years 1971–72, 1972–73, 1973–74, 1974–75, and 1975–76, negotiating contracts with the college for each of those years. Lee was paid no commissions on the Milton College account except for the 1969–70 first-policy year.

By letter dated December 7, 1972, WPS cancelled its agency agreement with Lee, effective January 1, 1973. The termination was not the result of any violation of the agreement. Under the terms of Sec. IV (3) of the agreement, any commission on business procured by Lee before the termination, and continuing in force, would accrue for a three-year period and would be payable to Lee.

On December 14, 1973, Lee commenced suit against WPS for renewal commissions in the amount of 10 percent of the yearly earned premiums on the Milton College —WPS student health plan for the period from September 1, 1970. He relied on the provisions of the written

agency agreement, and also an alleged verbal agreement providing for commissions on the Milton College account at the rate of 10 percent of earned premiums as to the first year and all subsequent renewals, as the bases for his contention that he was entitled to the commissions.

WPS denied the existence of any verbal agreement between the parties concerning 10 percent commissions for renewals of the Milton College account, and denied that Lee was entitled to any renewal commissions on that account based upon the written agency agreement.

The parties stipulated that the sole issues at trial were whether WPS was obligated to pay commissions to the respondent on student health contracts written by WPS on Milton College subsequent to August 31, 1970, and, if so, the amount of said commissions. The parties agreed that the interrogatories directed by Lee to WPS and the answers thereto could be used as necessary to supplement the statement of facts in the stipulation.

Trial was to the court. Lee and Maurice Reese, an insurance expert, testified in his behalf. Joseph H. Hinkes, sales director for the Blue Shield Plan, WPS, testified for WPS. Judgment was entered in favor of Lee and it provided that he recover from WPS: (1) Renewal commissions from 1970–71 through the school year of 1973–74, in the amount of $10,460.25,[1] plus interest; (2) renewal commission of 10 percent of earned premiums on the student health policy of Milton College for the school years 1974–75 and 1975–76, to be determined from WPS records plus interest as designated; and (3) costs and disbursements in the amount of $165.

---

[1] The stipulation before the trial court set forth that Lee claimed commissions in the amount of $10,460.25 due him for this period of time, plus 10 percent of the earned premiums for the two years, 1974–75 and 1975–76, which have not yet been determined. WPS admitted commission liability in the amount of 17 cents.

Essentially, the trial court found that Lee's agency arrangement with WPS, solely with respect to the Milton College contract, was made inoperative and in effect terminated by WPS. We agree with this conclusion of the trial court.

WPS, citing 43 Am. Jur.2d, *Insurance,* sec. 187, p. 244, contends that the right of an insurance agent to commissions on renewal premiums depends upon the contract existing between the agent and the insurance company:

"The right of an insurance agent to commissions on renewal premiums depends upon the contract existing between the agent and the insurance company or one of its general agents. His right to such commissions must be derived from the contract itself, and before he is entitled to recover under it, it is incumbent upon him to show that all conditions precedent to his right to such commissions have been performed."

This court has generally followed the above stated rule in determining an insurance agent's right to renewal commissions. *Matthew v. American Family Mut. Ins. Co.,* 54 Wis.2d 336, 195 N.W.2d 611 (1972) ; *Goff v. Massachusetts Protective Asso., Inc.,* 46 Wis.2d 712, 176 N.W.2d 576 (1970) ; *McCullough v. Brandt,* 34 Wis.2d 102, 148 N.W.2d 718 (1967) ; *Buska v. Central Life Assurance Co.,* 32 Wis.2d 534, 145 N.W.2d 721 (1966).

Under the provisions of the agency agreement, Lee was entitled to renewal commissions on renewal business procured by him. It is undisputed that he procured the initial business with Milton College. It is also undisputed that he did not procure the subsequent renewals of the Milton College contracts. WPS, by negotiating directly with the college and ultimately eliminating the agent's commission as a premium factor, effectively prohibited him from procuring the business and, therefore, deprived him of his commissions.

WPS maintains that under the agency agreement, Lee was only entitled to a commission on the initial 1969–70 contract procured by him and that he was only entitled to renewal commissions on renewals procured by him. WPS further points out that Lee's right to procure renewals was not exclusive. We do not disagree with this summarization of the agency agreement. However, we do not subscribe to the conclusion that a reasonable interpretation of the agency agreement produces a result whereby WPS, as principal, can write renewals directly with the insured at a reduced premium rate, which rate is arrived at solely by eliminating the agent's commission.

The meaning of the exclusive agency provision of the agreement in terms of the principal-agent relationship is at best ambiguous. In *Farley v. Salow,* 67 Wis.2d 393, 401, 227 N.W.2d 76 (1975), this court stated:

". . . In *Carey v. Rathman* (1972), 55 Wis.2d 732, 737, 738, 200 N.W.2d 591, this court said:
" 'In ascertaining the meaning of a contract, the court may look to the consequences which would result should it adopt one construction as opposed to another, because where there is ambiguity the more reasonable meaning should be given on the probability that persons situated as the parties were would be expected to contract in that way as opposed to a way which works an unreasonable result. *Wisconsin Employment Relations Bd. v. Gateway Glass Co.* (1953), 265 Wis. 114, 60 N.W.2d 768. While a court cannot engage in equitable redrafting of contracts, a construction which makes a contract reasonable, fair and just will be given over one making the contract unusual or extraordinary, if equally consistent with the language used. *Bank of Cashton v. La Crosse County Scandinavian Town Mut. Ins. Co.* (1934), 216 Wis. 513, 257 N.W. 451.' "

We do not believe the interpretation WPS proposes to place upon this agency agreement is reasonable. Initially WPS insisted that the renewal premium paid by the college include the 10 percent "loading factor" to

cover Lee's commission. As renewal negotiations progressed, WPS informed the college that the only way the premium could be reduced would be to eliminate the commission factor by eliminating Lee from the renewal transaction, and as a result the college did so. WPS refused to lower the premuim except by eliminating Lee's commission, and finally actually lowered the premium by an amount equal to the commission factor in order to effect the sale. The actions of WPS effectively prevented Lee from performing under the agency agreement and thereby defeated his right to earn a commission. The payment of the agent's commission cannot be avoided by this means. *August Rebhan Co. v. Taylor,* 153 Wis. 405, 141 N.W. 257 (1913).

Once WPS had taken the position the only possible reduction in renewal premium rates had to come from the elimination of Lee's commission, and once Milton College knew that, there was nothing Lee could do to procure the renewal and earn the commission. The renewal procurement had already been effectively foreclosed to him. An agent's right to a renewal commission cannot be so affected by such an arrangement between the insured and the insurer. Appleman, *Insurance Law and Practice,* Revised Vol. 16A, sec. 9003, p. 112.

WPS has taken this appeal from the whole of the judgment entered in the trial court. However, on appeal, no issue is raised as to the amount of the damages awarded by the trial court. On appeal, WPS relies on the provisions of the agency contract as its defense. Therefore, we do not reach or consider the issue of damages.

*By the Court.*—Judgment affirmed.