CHARLES MAGGARD AGENCY, INC., d/b/a Maggard and Mateja, Respondent,

v.

MISSOURI PUBLIC ENTITY RISK MANAGEMENT FUND, Appellant.

No. WD 55028.

Missouri Court of Appeals, Western District.

Aug. 25, 1998.

Michael G. Berry, Hendren and Andrae, Jefferson City, for appellant.

J. Christopher Spangler, Wesner, Kempton, Russell & Dominique, Sedalia, for respondent.

Before HANNA, P.J., and LAURA DENVIR STITH and EDWIN H. SMITH, JJ.

LAURA DENVIR STITH, Judge.

Appellant, Missouri Public Entity Risk Management Fund (hereinafter "MO-PERM"), appeals the trial court's grant of summary judgment in favor of Respondent, Charles Maggard Agency, Inc. (hereinafter "Maggard"). MOPERM is a liability insurance carrier that has an agency agreement with Maggard. MOPERM contends the trial court erred in ruling that MOPERM owes Maggard the 1996 and 1997 renewal commissions on the City of Sedalia's insurance policy with MOPERM. We agree. Once the insured, on its own initiative, decided to bypass Maggard as agent and to place its insurance directly with the insurer in 1996 and 1997, Maggard had no further right to commissions even though it had originally placed the City's insurance with MOPERM in 1989. We therefore reverse and remand for further proceedings in accordance with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

In January 1989, Maggard and MOPERM entered into a written agency agreement which granted authority to Maggard to receive and transmit proposals for coverage by MOPERM. In 1989, Maggard secured liability insurance coverage for its customer, the City of Sedalia. Pursuant to its agency agreement with MOPERM, Maggard transmitted a proposal for insurance coverage to be issued by MOPERM to the City of Sedalia. Each year thereafter, until 1996, the City of Sedalia renewed its insurance coverage with MOPERM by filling out an application for renewal obtained from Maggard. This was all its agency agreement required it to do, and in fact, this appears to have been nearly the totality of Maggard's service to the City, for the City normally dealt directly with MOPERM in regard to questions or claims. Moreover, although Maggard claimed below that it could have obtained cheaper insurance for the City than the insurance offered by MOPERM, it never tried to do so because it was concerned the City might open up all of its insurance for bidding and another agent would outbid Maggard.

Perhaps because of the limited nature of the services Maggard had been providing, shortly before the City of Sedalia's policy was to come up for renewal on January 1, 1996, its City Clerk contacted MOPERM and inquired about obtaining insurance coverage directly through MOPERM, without the use of Maggard as agent. MOPERM informed the City that it was permitted to buy coverage directly from MOPERM and that, if it did so, the City's premiums would be reduced by the amount of the agent's commissions. On November 17, 1995, the City sent a letter to MOPERM stating that it had decided to work directly through MOPERM for its liability coverage. The City then bought coverage directly from MOPERM for 1996, purposely bypassing Maggard as agent. Since the City specifically chose to act without going through Maggard, MOPERM did not give Maggard a commission of the 1996 renewal. MOPERM states that it asked the City to send a copy of its November 17, 1995 letter to Maggard at the time these events occurred, but the record does not affirmatively show that the City did so. It does show that, on January 18, 1996, Ruth Stokes, an employee of MOPERM, received a letter from Maggard inquiring about the status of the City's policy. In response, on January 22, 1996, MOPERM faxed to Maggard a copy of the City's November 17, 1995 letter requesting direct renewals by MOPERM. In late 1996, the City similarly placed its insurance for 1997 directly with MOPERM, again choosing not to proceed through Maggard.

In January 1997, Maggard filed a petition against MOPERM alleging breach of contract and seeking damages in the amounts that would have been the 1996 and 1997 commissions for the City's renewals. The trial court granted Maggard's Motion for Summary Judgement against MOPERM, finding that the parties' agency agreement did not provide that the agent's commissions would be discontinued if an insured renewed directly with the insurer. The court awarded Maggard $21,386, representing the total commissions due for the 1996 and 1997 renewals and additional costs. MOPERM appeals.

## II. STANDARD OF REVIEW

"The propriety of summary judgment is purely an issue of law which we review *de*

*novo* on the record submitted and the law." *Bonds v. Missouri Dep't of Mental Health,* 887 S.W.2d 418, 421 (Mo.App.1994). We review the grant of summary judgment by looking to the entire record to determine whether there is any issue of material fact and whether the moving party was entitled to judgment as a matter of law. *Dial v. Lathrop R–II Sch. Dist.,* 871 S.W.2d 444, 446 (Mo. banc 1994). We view the record in the light most favorable to the party against whom summary judgment was entered, and will affirm if the judgment is sustainable as a matter of law under any legal theory. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993).

### III. MOPERM IS NOT LIABLE TO MAGGARD FOR RENEWAL COMMISSIONS

MOPERM asserts the trial court erred by determining that its agency agreement with Maggard was still in effect with respect to the City of Sedalia's insurance policy. MOPERM argues that the City's independent decision to bypass Maggard as the City's agent terminated MOPERM's agency agreement with Maggard with respect to the City's policy at the end of the policy year then in effect. It alternatively argues that the agency agreement only entitled Maggard to commissions on insurance Maggard itself *placed* with MOPERM, and that Maggard did not place the City's insurance with MOPERM for the years 1996 and 1997—the insured did that directly.

In general, an insurance agent's right to renewal commissions depends upon the contract existing between the agent and the insurer. Unless such a right is expressly stipulated or clearly implied, the agent is not entitled to commissions on renewals which occur after termination of the agent's employment. *See Farmers Underwriters Ass'n v. Reid,* 425 S.W.2d 247 (Mo.App.1967), *citing, Christensen v. Prudential Ins. Co. of America,* 204 S.W.2d 459 (Mo.App.1947); *Appleman, Insurance Law and Practice* § 9003 (1981).

The agency agreement between Maggard and MOPERM first explains the terms under which Maggard can transmit or receive proposals for insurance, and then states:

> Commissions on business so placed with the fund . . . shall be paid directly to the Agent by the Fund from contributions paid to the Fund by the enrolled public entities. Such contributions shall be paid directly to the Fund by the enrolled public entities. The Agent shall not collect or receive contributions from enrolled public entities.

> In the event the Agency contract is terminated during the annual term for which coverage is in force, the Agent shall continue to be entitled to the commission on said coverage until its expiration date. The Agent shall not be entitled to the commission on any renewal after the termination of the Agency contract. The renewal date on all coverage is 12:01 A.M. January 1.

The trial court found that, under a plain reading of the agreement, Maggard was entitled to a commission on renewals from clients whose business it had originally procured until the entire agency agreement between Maggard and MOPERM was terminated. The trial court further found that because Maggard and MOPERM had not terminated the basic agency agreement, but rather the insured had just terminated Maggard's rights in regard to a single insured, then the agency agreement was still in effect as between Maggard and MOPERM, and so Maggard was still entitled to commissions on the renewals for the business which it had previously procured, including the City's renewals, even though it was not actually involved in the renewal by the City. The trial court reasoned that if MOPERM had intended that a direct placement of insurance with it by the insured would terminate the agent's rights to future commissions, it could and should have expressly so stated in the agency agreement.

While we agree with the trial court that one of the provisions of the agency agreement requires that MOPERM continue to pay commissions to Maggard for insurance it has placed until such time as either Maggard or MOPERM terminate the agreement, we do not agree that this provision is dispositive here. We believe that the language of the

provision demonstrates that it is intended to deal with the situation in which either the insurer or its agent determines to terminate their relationship entirely. In such a case, it guarantees that the agent shall keep any commissions earned for the remainder of the term of insurance then in effect, but shall not be entitled to commissions on renewals for future years. However, neither of those eventualities occurred here. It was neither MOPERM nor Maggard which terminated the relationship at issue here—it was the insured, the City of Sedalia, which terminated Maggard as its agent. The provision in question simply does not address the situation in which the insured determines not to continue to place insurance through the agent that the insured had previously used.

■ In fact, the only portion of the agency agreement which appears to be relevant to the situation at bar, in which the insured determined to no longer place insurance through the agent, is the portion of the agreement, quoted above, which is titled "Commissions." It begins with the phrase, "(2) Commission *on business so placed with the fund* shall be paid at the following rate: ..." (emphasis added). Thus, the contract clearly limits commissions to business *placed* with the fund by the agent; if the agent does not place the business, he or she is not entitled to a commission.

Maggard argues, in effect, that because it originally placed the City's business with MOPERM in 1989, it should always be considered as having placed the insurance with MOPERM, even after the City has affirmatively terminated it as agent and chosen to place its insurance with MOPERM directly, until such time as Maggard and MOPERM completely sever their agency agreement or until such time as the City quits buying insurance from MOPERM. We are cited to no case law to support this interpretation of the contract, however, and we do not think it consistent with the intent of the parties or the interpretation of agency law given in the

better-reasoned cases from other jurisdictions dealing with similar facts.

■ Very similar issues were addressed in *Fred Miller Co. v. Empire Fire and Marine Ins. Co.,* 503 F.2d 751 (8th Cir.1974), and *Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins.,* 69 F.3d 868 (8th Cir.1995)(applying Missouri Law). In *Fred Miller,* the Eighth Circuit had held that a general agent's rights of ownership and control over expirations [1] is not protected from the acts of an insured because an insured has the right to place its business with whomever it chooses. *Fred Miller,* 503 F.2d at 754, *citing, Northwest Underwriters v. Hamilton,* 151 F.2d 389, 392 (8th Cir.1945) (the agreement between the insurer and the agent is of no effect as to the insured and the insured can choose whomever it wants to issue it insurance). *Fred Miller* concluded that, as a necessary corollary of this rule, even though an agent owns the expirations on a policy, an insured may still choose to bypass the agent and go directly to the insurance company and assert its unwillingness to purchase insurance through the agent. *Id.*

*Davidson* relied on and extended the rationale of *Fred Miller* to cases dealing with the rights of an agent to commissions. In *Davidson,* a broker entered into an agreement with Liberty National to place insurance with it. The broker then procured insurance for the insured with Liberty National. The insured requested that the broker's commission not be included in the insurer's quote for the premium. Instead, the insured paid a sum of money to the broker separate from the premiums. When the policy became due for renewal, the insured decided to insure directly with the insurer. The insurer issued the insurance, canceling its agreement with the broker and not paying the broker a commission.

The agent sued the insurer for interference with its right to the insurance renewal commissions. The Eighth Circuit affirmed

---

1. Expirations are insurance records which contain the names and addresses of the insureds, as well as other information which enables the agent to attempt to renew policies upon their expiration. Because these records are usually

acquired and prepared by the agent, absent a contract to the contrary, the agent rather than the principal is considered the owner of the expirations. *Appleman, Insurance Law and Practice* § 9026 (1981).

the trial court's grant of summary judgment in favor of the insurer. It summarized its earlier holding in *Fred Miller* that the insured is free to alter its status with respect to the agent whenever it so chooses, even if it affects the agent's expirations, and then applied *Fred Miller's* rationale to an agent's right to commissions, stating:

> while the insurance company [in *Fred Miller*] could not solicit the subagents, the general agent was not protected against acts of the insured that could defeat his ownership and control of the expirations, *for an insured may place his business with whomever he pleases.*
>
> ... The rationale of *Fred Miller* transcends tortious interference claims and encompasses the relationships of parties in the insurance industry in general.

*Davidson,* 69 F.3d at 870 (emphasis added).

*Davidson* and *Fred Miller* relied on many earlier cases which had followed a similar approach. For example, *V.L. Phillips & Co. v. Pennsylvania Threshermen & Farmers Mutual Casualty Co.,* 199 F.2d 244 (4th Cir. 1952), held that if "an insured, for reasons personal to him, saw fit to renew his policy with defendant without solicitation by defendant, plaintiffs would have no right to commissions on such renewal." *Id.* at 247. Similarly, *Northwest Underwriters, Inc. v. Hamilton,* 151 F.2d 389 (8th Cir.1945), held that:

> "as between the insured and the plaintiff [agent, the contract of the agent and the insurer] ... was of no effect and did not bind it to renew its insurance through any particular agency. Neither did this contract have the effect as between the par-

ties to it, of insuring the agent against acts of the insured. .... When the insured had eliminated plaintiff as its agent or broker, defendant [insurer], we think was at liberty to deal directly with the insured."[2]

*Id.* at 392. While we are aware that Wisconsin applies a different rule,[3] we do not find its reasoning persuasive.

We thus hold that where, as here, the insured independently decides to deal directly with the insurer and purposely bypasses the agent, the agent has no cause of action against the insurer, unless, of course, the contract specifically provides therefore.

■ Our holding *does not mean* that an insurer is free to solicit the business of the insured directly, or to otherwise attempt to get the insured to place insurance directly with it, bypassing the agent. As noted in *Fred Miller* and similar cases, this would violate the insurer's duty not to interfere with the contract between insured and agent, and with the agent's reasonable business expectancy. It would also appear to be a breach of the agency agreement in this case, which states that the insurer will pay commissions on business placed with it by the agent, and which provides for a specific way in which the agent or the insurer can terminate their agreement. *See also Northwest Underwriters,* 151 F.2d at 392 ("during the existence of the agency a covenant of noninterference should be implied"); *Davidson,* 69 F.3d at 870 (insurer cannot solicit business of insured, but is not barred from accepting business where insured initiates contact).

**2.** The principle that the agent is not protected from the independent acts of the insured is also accepted in these, among other, cases: *Degnan v. General Accident, Fire, & Life Assur. Corp.,* 161 A.D. 439, 146 N.Y.S. 360 (1914), *aff'd,* 221 N.Y. 484, 116 N.E. 346 (1917) (when agency contract cancelled solely at the insistence of the insured, the insurer is not liable to the agent for commissions accruing after the cancellation); *Erlin v. Nat'l Union Fire Ins. Co.,* 217 Cal. 374, 18 P.2d 660 (1933) (the bad faith replacement of an agent by the insured does not create liability on behalf of the insurer for fraud); *Clinchy v. Grandview Dairy,* 283 N.Y. 39, 27 N.E.2d 425 (1940) (the insurer's duty is to deal with the broker selected by the insured and to either accede to the wishes

of the insured or to refuse to write the insurance); *Beidler & Bookmyer, Inc. v. Universal Ins. Co.,* 134 F.2d 828 (2d Cir.1943) (absent evidence insurer induced insured to cancel agent's policy, insurer is under no obligation to the agent for insured's cancellation).

**3.** *See, e.g., Lee v. Wisconsin Physicians Service,* 76 Wis.2d 353, 252 N.W.2d 24, 26 (1977) (insurer, in negotiating directly with the college, prohibited agent from performing under his contract and procuring renewals, and therefore in essence terminated the agency contract to the extent of the college's contract of insurance, and so should be liable to the agent for renewals.).

■ We thus would agree with the trial court's conclusion that the agent would still be entitled to commissions even if the insured renews directly with the insurer, if this were a case in which the insurer had initiated the direct contact with it by the insured, or had encouraged the insured to bypass the agent and deal directly with it. That is not the situation here, however. Here, it is the insured that inquired whether it was permitted to bypass the agent and deal directly with MOPERM, and that then took the initiative by writing MOPERM and requesting it to issue the insurance to it directly and not through Maggard. The evidence further shows that MOPERM did not try to hide this contact from Maggard, but rather asked the insured to inform Maggard of its decision to buy its own insurance directly from MOPERM. While it is unclear whether the insured did so inform Maggard, MOPERM did so as soon as Maggard asked it to in February 1996. Of course, Maggard must have already known that it had not placed the insurance for that year with MOPERM for the insured, since it is necessarily aware of its own acts or failure to act; the notice from MOPERM simply apprised Maggard that the insured had decided to place the insurance directly with MOPERM.

In this situation, we agree with MOPERM that the trial court's analysis is inapplicable. The insured has an unqualified right under Missouri law to end its relationship with the agent and to act through a new agent or directly with the insurer. MOPERM had no obligation to refuse to insure the insured except through Maggard. It simply agreed to provide the insured with the insurance the insured requested. It is not liable to Maggard for commissions for 1996 or 1997.

For the reasons stated herein, the judgment of the trial court is reversed and remanded for further proceedings in accordance with this opinion.

HANNA, P.J., and EDWIN H. SMITH, J., concur.