Robert PASKO, Scott Warren, Michael Wolfgram, Elizabeth Pridmore-Dahlke, Patrick LaBelle, Gertie Gilliam, Teresa Ulickey, Henry Zimmerman, Anna Merhalski, Alfonso Salinas, Richard Thompson, Jean Docter, Charlene Guiliani, Harold Davis, David Granica, Audrey Warren, Mary Sikoro, Linda Scholler, Joseph Suttle, Vicki Kakonis, Jeanne Sirna, Timothy Ridgway and Pamela Holmes, Plaintiffs-Respondents,

v.

CITY OF MILWAUKEE, City of Milwaukee Police Department and Philip Arreola, Chief of Police, Defendants-Appellants.

Court of Appeals

*No. 97–2135. Submitted on briefs August 4, 1998.—Decided October 6, 1998.*

(Also reported in 588 N.W.2d 642.)

275

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Grant F. Langley,* city attorney, and *Tracy M. Johnson,* assistant city attorney, of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *John F. Fuchs* and *Marcia A. Snow,* of *Fuchs, Snow, O'Connell & Destefanis,* S.C., of Milwaukee.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J.   The City of Milwaukee, the City of Milwaukee Police Department, and Philip Arreola, the former City of Milwaukee Chief of Police (collectively, "the City"), appeal from the trial court judgment granting summary judgment to City of Milwaukee Police Officer Robert Pasko and twenty-two other City of Milwaukee police officers on their breach of contract claim. The City argues that the "court erred in construing the 1991–1992 collective bargaining agreement between the City of Milwaukee and the Milwaukee Police Association to require the plaintiff police officers to be paid at the rate prescribed by the contract for the position of police alarm operator" for "the time spent performing the duties of police alarm operators."

We conclude that, by requiring the officers to work as police alarm operators on a permanent basis, and by refusing to promote them to the position of police alarm operator despite a contractual obligation to either promote them or other officers to the positions, the City, *de facto*, unlawfully circumvented its contractual compensation obligations. We conclude, therefore, that the trial court correctly granted summary judgment on the officers' breach of contract claim and, accordingly, we affirm.

276

## I. BACKGROUND

The facts are undisputed. The City employed the police officers under its collective bargaining agreement with the Milwaukee Police Association (MPA). The agreement delineated specific police ranks including "Police Alarm Operator"—personnel primarily assigned to computerized dispatch units, who were to be paid more than "Police Officer[s]."

The agreement also provided for "special duty pay" granting additional compensation, but only for those officers working as desk sergeants. Despite the MPA's negotiating efforts to broaden the "special duty pay" provision to also include officers working at other higher ranks, the City/MPA agreement did not provide additional "special duty pay" for officers working as police alarm operators until 1993.

Thus, without receiving any "special duty pay" or other additional compensation, the officers in this case, from approximately 1984 to 1995, worked regularly as police alarm operators by a process known as "underfilling"—assigning personnel to carry out duties of higher ranking personnel rather than filling vacancies at those higher positions. As a result, the police officers filed an action alleging that the City breached their 1991–92 collective bargaining agreement by requiring them to work as police alarm operators without promoting them or paying them for their employment in that capacity.[1] The officers sought to recover the difference between their compensation as police officers and the higher compensation they would have received as police alarm operators. They also sought promotion to

---

[1] The officers also filed several other claims, none of which is at issue in this appeal.

the rank of police alarm operators lest they be denied future compensation at the appropriate rank.

The trial court's decision granting summary judgment provides additional, important factual background and helpful explanation:

> The undisputed facts show that the . . . City and Police Department have approached the promotion of Police Officers to the rank of Police Alarm Operators with inaction since 1986, apparently due to an expectation that the position would be civilianized soon. There have been no promotions to the rank of Police Alarm Operator since 1986. As vacancies have occurred the positions have been underfilled by Police Officers. . . .
>
> There is no applicable legal definition of the term underfilling in statutes or case law and the contract is silent on the issue. The contract requires that Police Officers and Police Alarm Operators receive different rates of pay. It does not address the issues of a timeline for promotion or the filling of vacancies. The contract also does not specifically address when or how an employee is assigned to a particular classification. . . .
>
> The undisputed facts . . . indicate that underfilling is used by the department normally on an occasional and temporary basis. The facts presented indicate that the department has chosen to not permanently promote officers to the Police Alarm Operator position, and instead continuously underfills the position with both long term and short term Police Officer replacements. The duties performed by these replacement[s] are substantially the same as those performed by the properly promoted Police Alarm Operators who receive the higher rate of pay.

(Citations omitted.) The trial court concluded:

Underfilling in and of itself is a permissible practice when done on an occasional and temporary basis[.] [H]owever[,] when coupled with an undisputed, yet unofficial, policy of not promoting anyone to those positions on a permanent basis, [it] stops being temporary underfilling, and turns into a permanent practice that violates the terms of the contract. . . . The apparent policy of the city and department to not promote anyone into these positions for the past ten years goes beyond the practice of underfilling, and is a breach of the term of the contract setting the applicable pay scale for the performance of such duties.

The trial court's analysis is correct.

## II.  STANDARDS OF REVIEW

The trial court decided this case on the parties' cross-motions for summary judgment. Summary judgment standards, set forth in § 802.08, STATS., have been summarized in many cases, *see, e.g., Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 314–15, 401 N.W.2d 816, 820 (1987), and need not be repeated here. Although assisted by the trial court's decision, our review of summary judgment is *de novo. See id.* at 315, 401 N.W.2d at 820. In evaluating a breach of contract claim, a court must determine whether a valid contract exists, whether a party has violated its terms, and whether any such violation is material such that it has resulted in damages. *See generally, Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co.,* 206 Wis. 2d 158, 178–83, 557 N.W.2d 67, 75–78 (1996). When the contract is unambiguous, determining its meaning presents a question of law we also review *de novo. See Wausau Underwriters Ins. Co. v. Dane*

*County,* 142 Wis. 2d 315, 322, 417 N.W.2d 914, 916 (Ct. App. 1987).

## III.  ANALYSIS

Article 2–1 of the collective bargaining agreement specifies the separate positions of "Police Officer" and "Police Alarm Operator," and Article 10–1(a) and (c) of the agreement specifies different pay scales for the two ranks. Further, Article 5–3 of the agreement helps to clarify the extent to which officers may perform duties of police personnel at higher ranks:

> It is understood by the parties that every *incidental* duty connected with operations enumerated in job descriptions is not always specifically described; nevertheless, it is intended that all such duties shall be performed by the employee.

(Emphasis added.) The City does not contend that the officers, working as police alarm operators, were performing duties "incidental" to their duties as officers. As the officers argue, "No reasonable interpretation of the contract justifies the complete substitution of duties on a permanent basis which has occurred in this case, when the contract makes specific allowance for the assignment of only duties 'incidental' to those listed in the employee's job description."[2]

---

[2] It is undisputed that the plaintiff police officers were permanently assigned to work as police alarm operators for various periods of time, ranging from approximately six months to eleven years. The City does not contend that any of these periods of permanent assignment would not qualify for the higher compensation rate because of their brevity. The issue in this case relates not to length of service, but rather, to permanence of assignment.

280

The collective bargaining agreement is clear. It specifies different ranks and different pay scales. It is undisputed that the plaintiff officers have been assigned to work as police alarm operators on a permanent basis, but have been denied the rank and additional compensation of police alarm operators. Requiring police officers to work permanently as police alarm operators without promoting them or paying them to do so violates the agreement.

Moreover, even if one were to accept the City's suggestion that, because "underfilling" is undefined, the agreement may be ambiguous, the trial court's interpretation still would emerge as the only reasonable one. As the officers argue, the City has "circumvented the only reasonable reading of the contract by attempting to avoid promoting and paying literally half of [its] employees who are performing the duties of Police Alarm Operators on a permanent basis." To conclude otherwise would be to allow the City to avoid the consequences of the collective bargaining agreement. As the supreme court has declared:

> In ascertaining the meaning of a contract, the court may look to the consequences which would result should it adopt one construction as opposed to another, because where there is ambiguity the more reasonable meaning should be given on the probability that persons situated as the parties were would be expected to contract in that way as opposed to a way which works an unreasonable result.

*Lee v. Wisconsin Physicians Serv.*, 76 Wis. 2d 353, 359, 252 N.W.2d 24, 27 (1977) (quotation marks and quoted source omitted).

In this case, the contract is clear and, to the possible extent it requires any interpretation, the trial court's call was the only reasonable one. Simply stated, one party may not, *de facto*, reclassify employees in order to circumvent contractual compensation obligations. The City attempted to do so; the trial court's summary judgment, stopping it from doing so, enforced the contract.

*By the Court.*—Judgment affirmed.