Robert PASKO, Scott Warren, Michael Wolfgram, Elizabeth Pridmore-Dahlke, Patrick LaBelle, Gertie Gilliam, Terese Ulickey, Henry Zimmerman, Anna Merhalski, Alfonso Salinas, Richard Thompson, Jean Docter, Charlene Guiliani, Harold Davis, David Granica, Audrey Warren, Mary Sikora, Linda Scholler, Joseph Suttle, Vicki Kakonis, Jeanne Sirna, Timothy Ridgway, Pamela Holmes and the Milwaukee Police Association, Plaintiffs-Appellants,

v.

CITY OF MILWAUKEE, Board of Fire and Police Commissioners City of Milwaukee, Milwaukee Employes' Retirement System and Annuity and Pension Board and Milwaukee Police Chief Arthur Jones, in his official capacity, Defendants-Respondents-Petitioners.

Supreme Court

*No. 99–2355. Oral argument December 10, 2001.—Decided April 24, 2002.*

2002 WI 33

(Also reported in 643 N.W.2d 72.)

For the defendants-respondents-petitioners the cause was argued by *Leonard A. Tokus*, assistant city attorney, with whom on the briefs was *Grant F. Langley*, city attorney.

For the plaintiffs-appellants there was a brief by *John F. Fuchs, Marcia A. Snow* and *Fuchs Snow DeStefanis, S.C.,* Milwaukee, and oral argument by *John F. Fuchs.*

An amicus curiae brief was filed by *Jeffrey P. Sweetland* and *Shneidman Hawks & Ehlke, S.C.,* Milwaukee, on behalf of the Association of Law Enforcement Allied Services Personnel, Local 218, IUPA, AFL-CIO.

¶ 1. WILLIAM A. BABLITCH, J. The City of Milwaukee, City of Milwaukee Board of Fire and Police Commissioners, Milwaukee Employes' Retirement System and Annuity and Pension Board, and City of Milwaukee Police Chief Arthur Jones appeal from a court of appeals' decision that held that the Milwaukee Police Association was not barred from bringing its writ of mandamus action based on claim preclusion despite a similar action previously brought by its union members. The court of appeals concluded that claim preclusion did not apply because there was no privity between the union members in the first action and the union in this case. We agree. However, we disagree with the court of appeals' conclusion that, based on the current record, the Milwaukee Police Association was entitled to a writ of mandamus compelling the promotions of police officers to vacancies within the police department. Instead, we conclude that remand is appropriate on this issue to determine whether the collective bargaining agreement requires such promotions to occur, whether vacancies exist for such promotions, and whether, as the statute requires, such vacancies constitute "newly created offices." Accordingly, we reverse the court of appeals' decision and remand for additional proceedings consistent with this opinion.

# I. *PASKO I*

¶ 2. On November 8, 1993, Robert Pasko and 22 other City of Milwaukee police officers (officers) commenced an action in Milwaukee County Circuit Court against defendants City of Milwaukee, the City of Milwaukee Police Department, and Philip Arreola, the former City of Milwaukee Police Chief. The officers alleged that, from approximately 1984 to 1995, they worked regularly as police alarm operators under a process known as "underfilling," which entailed assigning lower ranking personnel to carry out duties of higher ranking personnel rather than filling vacancies at those higher positions. *See Pasko v. City of Milwaukee,* 222 Wis. 2d 274, 277, 588 N.W.2d 642 (Ct. App. 1998) (*Pasko I*). Despite working at the police alarm operator rank, the officers failed to receive pay commensurate with this rank. *Id.* Instead, they were paid at the lower rate applicable to police officers. *Id.* The officers therefore sought to recover the difference between their compensation as police officers and the higher compensation they would have received as police alarm operators. *Id.* at 277–78. They also sought promotion to the rank of police alarm operators so that they would not lose future compensation at the appropriate rank. *Id.* at 278.

¶ 3. The complaint alleged several causes of action, including breach of contract and a violation of Wis. Stat. § 62.50(9) (1991–92). Under the breach of contract claim, the officers alleged that the defendants breached the 1991–1992 collective bargaining agreement between the City of Milwaukee and the Milwaukee Police Association by requiring the officers to work as police alarm operators without promoting them to that rank or paying them for their employment in that capacity. The officers primarily relied on a section of the agree-

7

ment that provided for different rates of base salary for police officers and police alarm operators.[1] Under the statutory claim, the officers alleged that Wis. Stat. § 62.50(9) (1991–92) required the defendants to fill all vacancies at the police alarm operator rank as they occurred and that the failure to fill these positions constituted a violation of the statute. This statute provides:

> All vacancies in either [the police or fire] department shall be filled and all new appointments shall be made by the respective chiefs with the approval of the board. Where vacancies in old offices or newly created offices can, with safety to the department, be filled by the promotion of officers or persons already in the service

---

[1] This section stated in relevant part:

*ARTICLE 10*

*BASE SALARY*

1. Commencing Pay Period 1, 1991 (December 23, 1990), the biweekly base salary paid to employees shall be as follows:

a. Police Officer
 Police Matron
 Policewoman

 Step 1. $ 998.92
 Step 2. $1,098.44
 Step 3. $1,227.21
 Step 4. $1,276.63
 Step 5. $1,339.29

. . . .

c. Court Liaison Officer
 Identification Technician
 Narcotics Control Officer
 Police Alarm Operator

 Step 1. $1,326.03
 Step 2. $1,368.68
 Step 3. $1,413.15

8

and who have proved their fitness for the promotion, the vacancies in newly created offices shall be so filled by promotion by the respective chiefs with the approval of the board.

Wis. Stat. § 62.50(9) (1991–92).

¶ 4. The officers moved for summary judgment. The circuit court, the Honorable Patrick J. Madden presiding, granted summary judgment in favor of the defendants on all claims except on the breach of contract claim. On the breach of contract claim, the court concluded that there were disputed issues of fact as to whether the defendants had breached the collective bargaining agreement, and therefore, summary judgment was not appropriate at that time. The court dismissed the officers' claim under Wis. Stat. § 62.50(9) (1991–92), concluding that the statute did not specifically require the defendants to make any promotions, and as a result, no violation of the statute occurred. The officers did not appeal the court's dismissal of this statutory claim. Instead, they proceeded with the breach of contract claim.

¶ 5. The parties again moved for summary judgment on the breach of contract claim. This time, the circuit court, the Honorable Frank T. Crivello presiding, granted summary judgment to the officers, concluding that the defendants' failure to pay the officers according to the rank of police alarm operator constituted a breach of the terms of the collective bargaining agreement. The court concluded:

> There is no applicable legal definition of the term underfilling in statutes or case law and the contract is silent on the issue. The contract requires that Police Officers and Police Alarm Operators receive different rates of pay. It does not address the issues of a timeline for promotion or the filling of vacancies. The contract

9

also does not specifically address when or how an employee is assigned to a particular classification. However by looking at the plain language of the contract and the intent of the parties represented by that language, it appears that employees performing the duties and responsibilities of another classification on a regular basis should be paid the amount agreed to in the contract for that classification.

. . . .

Underfilling in and of itself is a permissible practice when done on an occasional and temporary basis, however, when coupled with an undisputed, yet unofficial, policy of not promoting anyone to those positions on a permanent basis, its [sic] stops being temporary underfilling, and turns into a permanent practice that violates the terms of the contract. . . . The apparent policy of the city and department to not promote anyone into these positions for the past ten years goes beyond the practice of underfilling, and is a breach of the term of the contract setting the applicable pay scale for the performance of such duties.

Based on this analysis, the court granted summary judgment to the officers. The court noted that the officers requested damages in the amount of the difference between the rate of pay as a police officer and the rate of pay as a police alarm operator, and it concluded that such relief was appropriate.

¶ 6. The court of appeals affirmed in an October 8, 1998, published decision, concluding that the circuit court correctly granted summary judgment on the officers' breach of contract claim. *Pasko I*, 222 Wis. 2d at 276. Specifically, the court held:

The collective bargaining agreement is clear. It specifies different ranks and different pay scales. It is undisputed that the plaintiff officers have been as-

10

signed to work as police alarm operators on a perma-
nent basis, but have been denied the rank and addi-
tional compensation of police alarm operators.
Requiring police officers to work permanently as police
alarm operators without promoting them or paying
them to do so violates the agreement.

*Id.* at 281. The court affirmed the circuit court's order
awarding back pay to the officers. It did not specify any
other relief, namely promotions, to which the officers
were entitled, even though the opinion indicated that
the failure to promote the officers constituted a viola-
tion of the collective bargaining agreement. *Id.* at 276,
281.

## II. *PASKO II*

¶ 7. On December 8, 1998, the same officers from
*Pasko I* and the Milwaukee Police Association filed an
action in Milwaukee County Circuit Court in part
against the City of Milwaukee, City of Milwaukee Board
of Fire and Police Commissioners, and the Milwaukee
Police Chief Arthur Jones (collectively "City"). The
Milwaukee Police Association (MPA) is the certified
collective bargaining unit for all City of Milwaukee
police officers in non-supervisory ranks. In their com-
plaint, the officers and the MPA alleged that vacancies
remained at the rank of police alarm operator and that
the City was required to fill these vacancies pursuant to
Wis. Stat. § 62.50(9) (1997–98).[2] The MPA and the
officers also noted that *Pasko I* held that the failure to

---

[2] All subsequent references to the Wisconsin Statutes are to
the 1997–98 version unless otherwise indicated.

Wisconsin Stat. § 62.50(9) (1997–98) is identical to the
language of Wis. Stat. § 62.50(9) (1991–92), which was enumer-
ated above.

fill these vacancies constituted a breach of the collective bargaining agreement. They requested a writ of mandamus from the court compelling the City to effectuate promotions to unfilled police alarm operator positions within the Milwaukee Police Department.

¶ 8. The complaint also named the Milwaukee Employes Retirement System and Annuity and Pension Board (MERS/BOARD) as a defendant. The complaint alleged that the MERS/BOARD erred by allowing some of the officers, including Robert Pasko, to retire at a police officer's pay instead of at a police alarm operator's pay. The officers sought a writ of mandamus ordering the MERS/BOARD to grant the officers who had since retired the pay applicable to a police alarm operator.

¶ 9. The defendants sought a dismissal based on the doctrine of claim preclusion in their answer. The officers and the MPA then moved for summary judgment.

¶ 10. The circuit court, the Honorable Patricia D. McMahon presiding, ruled that the officers and the MPA were both barred from proceeding based on claim preclusion. In applying the doctrine, the court noted that the determinative issue was whether there was an identity between the parties in the first and second actions. The court held that the officers were clearly barred because they were the exact same officers as in the first suit. With respect to the MPA, the court held that, even though the union was not a party in the first action, it was still barred from proceeding. The court based its decision on the fact that the MPA was the collective bargaining agent that negotiated the contract that was at the heart of both cases. To conclude otherwise, the court stated, would be to place form over substance. Because the claims were barred, the court did not directly decide the merits of the claims and

instead granted summary judgment in favor of the defendants. The MPA appealed.

¶ 11. In a published decision, the court of appeals concluded that the MPA's action against the City was not barred by the doctrine of claim preclusion.[3] *Pasko v. City of Milwaukee,* 2001 WI App 55, ¶ 11, 241 Wis. 2d 226, 624 N.W.2d 859 (*Pasko II*). The court based its decision on the lack of privity between the officers who brought the first suit and the MPA in the second suit. *Id.* Because claim preclusion did not apply, the court of appeals then addressed the MPA's writ of mandamus claim. *Id.* at ¶¶ 12–18. After finding that the criteria for a writ were satisfied, the court held that the MPA was entitled to a writ compelling the City to fill the vacancies in the rank of police alarm operator with qualified officers. *Id.* at ¶¶ 13–18. In turn, the court reversed the circuit court's grant of summary judgment against the MPA and instead remanded to the circuit court for an entry of a writ of mandamus. *Id.*

¶ 12. We address two issues. First, we examine whether the MPA is barred from bringing its writ of mandamus action under the doctrine of claim preclusion. We conclude that the claim is not barred under this doctrine. Second, we address whether the MPA is entitled to a writ of mandamus compelling the City to promote, pursuant to Wis. Stat. § 62.50(9), qualified police officers to vacancies in the rank of police alarm operator. On this issue, we conclude that § 62.50(9) does not create a positive and plain duty for the City to

---

[3] The court of appeals noted that the individual officers had conceded that claim preclusion applied to them and barred their claims. *Pasko v. City of Milwaukee,* 2001 WI App 55, ¶ 1 n.2, 241 Wis. 2d 226, 624 N.W.2d 859. Therefore, on appeal, the court addressed only the circuit court's ruling affecting the MPA's claims against the City.

fill any such vacancies by promotion as they occur, and therefore, standing alone, the statute does not require us to issue a writ in this case. We recognize, however, that the collective bargaining agreement may, when read alone or in conjunction with the statute, incorporate language that requires promotions to vacancies as they occur. In this case, however, the record is incomplete as to whether the collective bargaining agreement requires such promotions. Further, the record is unclear as to whether such vacancies currently exist at the rank of police alarm operator and whether these vacancies are, as § 62.50(9) requires, "newly created offices." We therefore remand to the circuit court for factual determinations on these issues.

## III. CLAIM PRECLUSION

¶ 13. We first address whether the MPA is barred from bringing its writ of mandamus action based on the doctrine of claim preclusion.

¶ 14. The doctrine of claim preclusion states that "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983). Before an earlier proceeding will act to preclude a claim in another action, three factors must be present: "(1) an identity between the parties or their privies in the prior and present suits; (2) an identity between the causes of action in the two suits; and, (3) a final judgment on the merits in a court of competent jurisdiction." *Northern States Power Co. v. Bugher*, 189 Wis. 2d 541, 551, 525 N.W.2d 723, 727 (1995).

14

¶ 15. This case turns on the first prong of the analysis, that is, whether there was an identity between the parties or their privies in the first and second suits. In short, we examine whether there was privity between the officers in *Pasko I* and the MPA in this action requiring preclusion of MPA's action.

■■■

¶ 16. Privity exists when a person is so identified in interest with a party to former litigation that he or she represents precisely the same legal right in respect to the subject matter involved. *See Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 298 (1917); *see also* Restatement (First) of Judgments, § 83, cmt. a (1942). The question of whether the MPA is in privity with its members is a question of law that we review de novo. *See Paige K.B. v. Steven G.B.*, 226 Wis. 2d 210, 226–27, 594 N.W.2d 370 (1999). The burden of proving claim preclusion is upon the party asserting its applicability. *Alexopoulos v. Dakouras,* 48 Wis. 2d 32, 37, 179 N.W.2d 836 (1970).

¶ 17. The City argues that the court of appeals erred in concluding that there was no privity between the officers in *Pasko I* and the MPA in this case. It asserts that privity was established between the parties by the collective bargaining agreement. This agreement, the City contends, was entered into by the MPA for the benefit of the officers. The officers were third-party beneficiaries to the agreement and brought their action in *Pasko I* based on their interest in the agreement. The MPA is now bringing a similar action on behalf of its members based again on the collective bargaining agreement. The City contends that the contractual relationship between the officers and the MPA establishes privity between them for purposes of claim preclusion. We disagree.

¶ 18. The contractual relationship between the MPA and the officers does not, in and of itself, determine privity for purposes of claim preclusion. Instead, as the court of appeals concluded, " '[i]n order to be in privity with a party to a judgment, [a nonparty] must have such absolute identity of interests that the party to the earlier action represented the same legal interest as the non-party to that first action.' " *Pasko II,* 2001 WI App 55, ¶ 10 (quoting *Amber J.F. v. Richard B.,* 205 Wis. 2d 510, 516, 557 N.W.2d 84 (Ct. App. 1996)); *Chad M.G. v. Kenneth J.Z.,* 194 Wis. 2d 689, 695, 535 N.W.2d 97 (Ct. App. 1995). In other words, privity compares the interests of a party to a first action with a nonparty to determine whether the interests of the nonparty were represented in the first action. In turn, although the contractual relationship between the officers and the MPA may provide evidence to show that the parties' interests were similar, the relationship itself is not necessarily determinative on the privity question. *See Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 346 (2d Cir. 1995) ("Whether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions.").

¶ 19. On this issue, the court of appeals concluded that "[t]he officers and the MPA do not share the requisite 'absolute identity of interests.' " *Pasko II,* 2001 WI App 55, ¶ 10. The court opined as follows:

> Although the interests of the officers and the MPA are overlapping, they are not identical. In both the preceding action and the instant action, the individually named officers' interests were exclusively personal. In the first suit, "[t]he officers sought to recover the

16

difference between their compensation as police officers and the higher compensation they would have received as police alarm operators," as well as "promotion to the rank of police alarm operators." *However, in the instant action, while the MPA's interests include the promotion of the individually named officers as MPA members, its interests extend beyond the litigating officers to the rest of its members qualified to hold the rank of Police Alarm Operator.* In other words, the MPA is seeking to compel the City to promote any of its qualified member-officers, not necessarily the incumbent officers.

*Id.* at ¶ 11 (citations omitted) (emphasis added).

¶ 20. We agree the interests of the officers and the MPA are different in this case. In *Pasko I,* the officers brought an action to obtain relief for themselves based on their underfilling at the rank of police alarm operator. They sought, based on state statute and the collective bargaining agreement, back pay and promotions for themselves, arguing that the City could not require them to work as police alarm operators without promoting them or paying them for their work in that capacity. Once the circuit court determined that the statute did not require the promotions of the officers to this rank, the officers abandoned this claim and instead pursued their claim under the collective bargaining agreement, again seeking payment and promotions for themselves. Eventually, they gained relief in the form of payment for their services based on the agreement.

¶ 21. Unlike the officers, the MPA seeks a determination based solely on state statute, arguing that the statute requires the promotion of any qualified officer to vacancies in the rank of police alarm operator. Thus, as the court of appeals noted, the MPA is seeking a determination on behalf of all of its members, that is,

for any qualified officer that is entitled to promotion to police alarm operator vacancies. The union's interest in filling such vacancies is not based on the unfairness of any individual officers underfilling in these positions. Instead, the union's interest is based on ensuring that a classification for which it specifically bargained is recognized by the City by filling any vacancies in this classification. Further, it is based on the union's interest in ensuring that the City follows its obligations under state statute. Individual officers may not pursue such a claim with the same zealousness as the union if the officers themselves are not guaranteed the promotion. Indeed, in this case, the officers' failure to pursue the statutory claim beyond the circuit court suggests that the officers believed that, even if promotions were required under the statute, they may not have been awarded the promotions. Thus, the MPA's pursuit of such promotions is based on different objectives and interests, focusing primarily on the interests of all members. *Cf. Abels v. Titan Int'l, Inc.,* 85 F. Supp. 2d 924, 933–35 (S.D. Iowa, 2000) (union members were not precluded from bringing an action against their employer seeking declaratory relief under ERISA to clarify rights to future benefits under their pension plan even though their union had recently voluntarily dismissed a similar action seeking a declaration of rights under the collective bargaining agreement; the court found no privity between the parties because they had different interests).

¶ 22. Further, we conclude that claim preclusion should not apply because such application would result in unfairness to the MPA. Normally nonparties to an action are not bound to a judgment therein based on the principle that everyone should have their day in court.

18

*McCourt v. Algiers,* 4 Wis. 2d 607, 611, 91 N.W.2d 194 (1958); *see also Richards v. Jefferson County,* 517 U.S. 793, 795 (1996). We have therefore recognized that, when deciding whether to apply claim preclusion to a nonparty's action, it is appropriate to consider whether such application will result in unfairness to the nonparty. *F.P.R. v. J.M.,* 137 Wis. 2d 375, 382, 404 N.W.2d 530 (1987); *McCourt,* 4 Wis. 2d at 611; *Desotelle v. Cont'l Cas. Co.,* 136 Wis. 2d 13, 21, 400 N.W.2d 524 (Ct. App. 1986). In other words, claim preclusion should be applied so as not to deprive a party of a full and fair determination of an issue. *Id.* at 21–22. Under the facts and circumstances of this case, we conclude that to hold that each member of the union is bound by an action taken by 23 individual members would be unfair to the other members of the union. The overall interests of the union were not of primary concern in the first action, and in order to provide the members with their fair day in court, we conclude that claim preclusion should not apply in this instance.

## IV. WRIT OF MANDAMUS

¶ 23. Because we conclude that the action in this case is not precluded, we next examine whether a writ of mandamus is warranted to compel the City to fill vacancies in the rank of police alarm operator. The MPA argues that the writ is warranted based on Wis. Stat. § 62.50(9). The interpretation of § 62.50(9) is a question of law that we determine independently, while benefiting from the analyses of the circuit court and the court of appeals. *See Patients Comp. Fund v. Lutheran Hosp.-LaCrosse, Inc.,* 223 Wis. 2d 439, 454, 588 N.W.2d 35 (1999).

¶ 24. A writ of mandamus may be used to compel public officers " 'to perform duties arising out of their office and presently due to be performed.' " *Law Enforcement Standards Bd. v. Village of Lyndon Station,* 101 Wis.2d 472, 494, 305 N.W.2d 89 (1981). In order for a writ of mandamus to be issued, four prerequisites must be satisfied: "(1) a clear legal right; (2) a positive and plain duty; (3) substantial damages; and (4) no other adequate remedy at law." *Id.*

¶ 25. The court of appeals concluded that a writ was required in this case. The court specifically held that Wis. Stat. § 62.50(9) created a positive and plain duty upon the City to fill the vacancies, noting that the statute's use of the word "shall" placed a ministerial obligation on the part of the City to fill vacancies. *Pasko II,* 2001 WI App 55, ¶ 14. The court opined as follows:

> Section 62.50(9) indicates that "[a]ll vacancies . . . shall be filled," and that where vacancies can be filled by promotion, "the vacancies . . . *shall* be so filled." Wis. Stat. § 62.50(9) (emphasis added). *The statute's use of the word "shall" as opposed to "may" places a ministerial, rather than a discretionary, obligation on the City to fill vacancies within a reasonable time whenever possible via promotion.* Therefore, we conclude that § 62.50(9) requires the City to take reasonable steps to promote qualified officers in order to fill available Police Alarm Operator positions, thus creating a "positive and plain duty."

*Id.* (citations omitted) (emphasis added). We disagree with this interpretation of the statute.

¶ 26. When interpreting a statute, we look to the plain language. *See State v. T.J. Int'l, Inc.,* 2001 WI 76,

20

¶ 20, 244 Wis. 2d 481, 628 N.W.2d 774. If we can determine the meaning of the statute based on its plain language, we need not look any further. *Id.* The MPA relies primarily on the following language in the statute: "All vacancies in either [the police or fire] department shall be filled and all new appointments shall be made by the respective chiefs with the approval of the board." Wis. Stat. § 62.50(9). The MPA argues, like the *Pasko II* court of appeals, that the legislature's use of the word "shall" in the statute requires the City to fill all vacancies in the department as they occur. We disagree and instead conclude that the circuit court in *Pasko I* correctly interpreted this section of Wis. Stat. § 62.50(9) as a grant of power, rather than a mandate to the chief. The court stated:

> [A] review of § 62.50(9) shows that the legislature has merely designated who has the authority to fill any vacancies. It is not a mandate to the chief, but rather a grant of power. This is clear when "[a]ll vacancies" is read in conjunction with "all new appointments". The legislature is clearly granting police chiefs the authority to determine who will be on their departments, subject to board approval.

In other words, this sentence only designates *who* must fill vacancies and new appointments in the department, not *when* the vacancies must be filled. Therefore, it does not create a positive and plain duty to, as the MPA argues, fill vacancies as they occur.

¶ 27. The circuit court also correctly noted that, when comparing Wis. Stat. § 62.50(9) to other subsections under Wis. Stat. § 62.50, it is clear that the legislature intended to delineate authority between the board and the chief of police under § 62.50(9). Other subsections clearly direct the board or another person to act. *Compare* § 62.50(9) ("All vacancies in either

21

department shall be filled and new appointments shall be made by the respective chiefs with the approval of the board.") *with* § 62.50(6) ("If a vacancy exists in the office of chief of police or in the office of chief engineer of the fire department, the board by a majority vote shall appoint proper persons to fill such offices respectively."); § 62.50(7)(a) ("If a vacancy exists in the office of assistant chief, the chief of police shall nominate and, with the approval of the board, shall appoint a person to a term of office . . . ."); § 62.50(7)(b) ("If a vacancy exists in the office of inspector of police or captain of police, the chief of police shall nominate and, with the approval of the board, shall appoint a person to the office . . . ."); § 62.50(8) ("If a vacancy exists in the office of the first assistant engineer of the fire department, the chief engineer shall nominate and with the approval of the board shall appoint a suitable person to the office . . . .").

¶ 28. Wisconsin Stat. § 62.50(9) also includes the following language:

> Where vacancies in old offices or newly created offices can, with safety to the department, be filled by the promotion of officers or persons already in the service and who have proved their fitness for promotion, the vacancies in newly created offices shall be so filled by promotion by the respective chiefs with the approval of the board.

The *Pasko II* court of appeals determined that this language also constituted a mandate to the chief of police to fill vacancies by promotion as they occur. We disagree. This sentence essentially expands on the previous sentence. Whereas the previous sentence granted authority to the chief to fill all vacancies in the department, this sentence specifies the manner in which the chief is to fill vacancies in "newly created

22

offices." It provides that vacancies in "newly created offices" shall be filled "by promotion," but only when such promotions can occur with safety to the department. The determination of whether a vacancy can be filled by promotion with safety to the department is a matter of discretion for the chief. If the chief determines that such vacancies can be filled by promotion with safety to the department, the chief must fill these positions "by promotion." However, the statute does not require the chief to fill these positions at any certain time. The circuit court noted as much, stating: "Further, § 62.50(9) has no temporal element. A chief would arguably be violating § 62.50(9) each day a vacancy goes unfilled. This would be an absurd result." The statute only requires that, if these vacancies are filled, they must be filled by promotion.

¶ 29. Alternatively, the chief may determine that the vacancies in such "newly created offices" cannot be filled by promotion without doing damage to the department. In such an event, the statute does not specify how the chief is to fill these vacancies. Presumably then, the chief may fill these vacancies through means other than by promotion or may choose not to fill the positions at all. On the whole, the statute requires the chief to make a threshold discretionary determination, and if this determination is met, it designates only the manner in which the chief must fill these vacancies, that is, "by promotion." Thus, we conclude that the statute alone does not create a positive and plain duty for the chief to, as the MPA argues, fill these vacancies by promotion as they occur.

▮▮▮▮

¶ 30. The *Pasko II* court of appeals concluded that, based on the statute, the collective bargaining agreement, and the *Pasko I* decision, the MPA had a

"positive and plain duty" and "clear legal right" to the promotions. The court of appeals reached this determination even though the MPA based their argument for mandamus solely on Wis. Stat. § 62.50(9), not the collective bargaining agreement or *Pasko I*.[4] Nevertheless, we recognize that the statute must be interpreted in conjunction with the collective bargaining agreement because the agreement may contain language, when either read alone or in conjunction with § 62.50(9), requiring the City to fill such vacancies as they occur. We, however, conclude that, based on the current facts in the record, we cannot make any such determination in this case. To begin with, the whole collective bargaining agreement is not contained in the record. Moreover, there is currently a factual uncertainty as to whether any police alarm operator vacancies currently exist or whether this position is considered a "newly created office." As a result, we remand to the circuit court for a determination on these issues. On a final note, we conclude that, although *Pasko I* stated that the City's practice of underfilling the police alarm operator positions on a permanent basis without paying or promoting the officers violated the collective bargaining agreement, we do not interpret this decision as making a clear determination as to whether the collective bargaining agreement specifically required the City to immediately promote officers to any current vacancies. In turn, remand is appropriate.

---

[4] During the summary judgment hearing on the writ of mandamus, the MPA's attorney argued as follows: "And the only order I'm seeking, and I'm seeking it on behalf of the Milwaukee Police Association, is that the chief and fire and police commission be ordered under 6250 to fill those positions."

## V. CONCLUSION

¶ 31. In sum, we conclude that the MPA is not precluded from pursuing its writ of mandamus action at this time. However, from the facts currently presented in the record, we cannot conclude, as the court of appeals did, whether the MPA is entitled to a writ of mandamus at this time. We therefore reverse the court of appeals' decision and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and cause remanded.